COLORADO INTERSTATE GAS COMPANY, a Delaware Corporation, Appellant (Plaintiff),

v.

NATURAL GAS PIPELINE COMPANY OF AMERICA, Appellee (Defendant).

No. 91–151.

Supreme Court of Wyoming.

Dec. 3, 1992.

Petition for Rehearing Denied Jan. 5, 1993.

Michael L. Beatty, Rebecca H. Noecker, and Michael L. Williams, Colorado Springs, Colo., Elizabeth A. Phelan, Dubofsky & Phelan, Boulder, Colo., and Marilyn S. Kite and Lawrence J. Wolfe, Holland & Hart, Cheyenne, for appellant.

Paul Hickey and Richard Bush, Hickey & Evans, Cheyenne, Paul E. Goldstein, Lombard, Ill., and Paul Korman, Washington, D.C., for appellee.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT,* and GOLDEN, JJ.

THOMAS, Justice.

The only substantive issue presented in this case is the interpretation of a provision relating to the presentation of a bill by the seller, which controls the obligation of the buyer to pay interest, in a contract for the sale of natural gas. The procedural question, since a summary judgment was granted in favor of the buyer, is whether the situation is one in which there are no genuine issues of material fact, and the buyer is entitled to judgment as a matter of law. The contract provided for the charging of interest by the seller to the buyer on amounts due under the contract pursuant to the general terms and conditions of the

seller's Federal Energy Regulatory Commission (FERC) gas tariff, and required that amounts payable under the minimum bill "shall be billed by Seller on October 10 for deliveries during the prior fiscal year and shall be payable by buyer by October 20."

The trial court ruled there were no genuine issues of material fact in this case, and the contract provisions required the submission of a statement by Colorado Interstate Gas Company (CIG) to Natural Gas Pipeline Company of America (NGP) before any interest would accrue. We agree with the trial court that this record discloses no genuine issue of material fact, and NGP is entitled to judgment as a matter of law. The Order Granting Natural Gas Pipeline Company of America's Motion for Summary Judgment is affirmed.

CIG, as appellant, sets forth this list of the issues:

I. Whether the court erred in failing to grant summary judgment for CIG because the undisputed facts showed that CIG satisfied the billing requirement of the contract?

A. Alternatively, whether the billing requirement of the contract raised questions of disputed material facts that precluded summary judgment for NGPL?

II. Whether the court erred in failing to grant summary judgment for CIG because the undisputed facts showed that NGPL was responsible for any delay in submission of an invoice?

A. Alternatively, whether NGPL's responsibility for any delay in submission of an invoice raised a question of disputed material fact that precluded summary judgment for NGPL?

III. Whether the court erred in failing to grant summary judgment for CIG because the undisputed facts showed the submission of an invoice would have been a useless act?

A. Alternatively, whether there were disputed material facts regarding the uselessness of submitting an invoice,

---

* Chief Justice at time of oral argument.

which precluded summary judgment for NGPL?

IV. Whether, in any event, CIG is entitled to interest under basic principles of equity, recognized by Colorado and the FERC?

V. Whether, in any event, NGPL's tender of payment in 1986 required NGPL to pay interest on the 1986 minimum bill?

NGP, in its Answer Brief, states the issues in this way:

1. Is the decision of the District Court granting appellee Natural Gas Pipeline Company of America's ("Natural") motion for summary judgment, and thereby dismissing appellant Colorado Interstate Gas Company's ("CIG") First Amended Complaint for interest under its contract with Natural, supported by principles of contract interpretation and standards for summary judgment?

2. Is the decision of the District Court that CIG's obligation to timely present a minimum bill to Natural was neither excused as a "useless act" and that Natural was not responsible for CIG's delay in presenting minimum bills supported by principles of contract interpretation and standards for summary judgment?

3. Did Natural's tender of payment to CIG in 1986 and CIG's rejection of that tender excuse CIG's contractual obligation to render a bill as a prerequisite to collecting interest from Natural on the 1986 minimum bill?

4. Is CIG entitled to interest on "equitable" grounds notwithstanding the language of the parties' contract to the contrary?

CIG brought this action to recover approximately $8 million from NGP, which was alleged to be the amount due as interest on contract payments for natural gas that NGP was obligated to pay for under the minimum take provisions of a gas purchase contract. The material contract provisions are:

> In the event Buyer's [NGP] actual purchases for the fiscal year are less than the Minimum Volume, then any deficiency shall be billed at the unit fixed cost component under Rate Schedule F-1 as reflected on Sheet No. 8 of Seller's [CIG] FERC Gas Tariff, Original Volume No. 1. **Interest shall be charged by Seller and paid by Buyer on amounts due hereunder** pursuant to the General Terms and Conditions of Seller's FERC Gas Tariff. **Any amounts payable under the minimum bill shall be billed by Seller on October 10 for deliveries during the prior fiscal year and shall be payable by Buyer by October 20.** (Emphases added.)

The pertinent language in the FERC Tariff reads:

> 7.2 Unpaid Amounts—Should Buyer fail to pay the amount of any bill for gas delivered, as herein provided, when such amount is due, interest on the unpaid amount shall accrue at the rate as currently prescribed by the Federal Energy Regulatory Commission in rate settlement refunds from the due date until the date of payment. * * *.

> 7.3 Extension of Time of Payment— If presentation of a bill by Seller is delayed after the tenth day of the month, then the time of payment shall be extended accordingly unless Buyer is responsible for such delay.

NGP did not make payments for the deficiencies (the disparity between actual purchases and the minimum volume prescribed in the contract) for 1986 and 1987 (fiscal years 1987 and 1988) until 1990. CIG claimed in this suit that the interest was due under the "minimum bill" clause set forth above in its contract with NGP. Throughout the years at issue here, as well as in the preceding and following years, CIG and NGP were engaged in extensive litigation before the federal courts and the FERC addressing the amounts due to CIG from NGP under the contract. We will discuss that litigation more fully later in our opinion.

The magnitude of the amount at issue in this appeal is significant. As would be anticipated in a contest between two giants of the natural gas industry, the creativity and attention to detail by both of the parties is impressive. However, aside from the amount of the recovery sought, the

case is not necessarily of paramount significance in connection with the law relating to minimum-purchase, natural gas contracts. This controversy must be set in the historical context of the natural gas industry during the last decade. As demand for natural gas decreased and prices rose in the early 1980s, "minimum commodity bills came under attack by customers whose markets could no longer absorb such volumetric commitments." 2 AMERICAN GAS ASSOCIATION, REGULATION OF THE GAS INDUSTRY § 35.04[2] at 35–24 (1991). FERC ruled such agreements had the effect of distorting the markets and were anti-competitive and, "[b]y the end of 1984, the only remnant of minimum bills and minimum take provisions was the fixed-cost portion of the minimum commodity bill." REGULATION OF THE GAS INDUSTRY § 35.04[2] at 35–24. CIG and NGP were involved in regulatory proceedings before FERC beginning in 1983 and continuing forward until the present time. Their disagreements resulted in legal confrontation in both state and federal courts, as well.

We address the issues raised, first, under our well-recognized standard of review for summary judgments and, second, under our usual standards for the construction of contracts. A summary judgment is appropriate and is correctly entered only where there is no genuine issue of material fact, and the prevailing party is entitled to judgment as a matter of law. *Century Ready–Mix v. Campbell County*, 816 P.2d 795 (Wyo.1991). The record discloses that CIG, knowingly and voluntarily, decided not to submit a bill to NGP because it did not deem it "appropriate" during the course of the other litigation between these parties. Correspondence addressed to NGP in both 1986 and 1987 encompasses specific statements by CIG that it chose to "delay" sending minimum bills. While the reason that CIG chose to delay sending these bills does not make any difference to our decision, in the interest of candor, we acknowledge the claim of NGP that CIG made this choice in the hope that it could treble the amount of the interest due in its anti-trust litigation against NGP. The record is clear that CIG did not submit bills, and there is nothing in the factual materials in this record which even suggests NGP was responsible for the delay in submission of those bills.

Our rule with respect to contractual construction is that, if there is no ambiguity in a written contract, summary judgment is appropriate because contracts must generally be construed as a matter of law. *Metropolitan Mortgage & Securities Co, Inc. v. Belgarde*, 816 P.2d 868 (Wyo. 1991). The terms of this contract are clear. In *Quin Blair Enterprises, Inc. v. Julien Construction Co.*, 597 P.2d 945 (Wyo. 1979), the principles applicable in this case are summarized. When parties make a contract and reduce it to writing, they must abide by its plainly stated terms. *Quin Blair. See Westates Construction Company v. City of Cheyenne*, 775 P.2d 502 (Wyo.1989); *Keith v. Burzynski*, 621 P.2d 247 (Wyo.1980). The parties are free to ignore the provisions of an applicable contract but, any party does so at his peril, and that party must recognize he may bear the consequences of disregarding those provisions when a breach of the contract becomes a reality.

Indeed, in such instances, it is especially important that contracts be honored. The terms of the contract at issue here accomplish a plain and beneficial purpose, i.e., the submission of the minimum bills starts the running of interest if that bill is not paid according to the terms of the contract. After competent parties have made a solemn contract, a court ought to exercise restraint in nullifying its terms because any other practice is dangerous. It is clear from the provisions of this contract that the requirement for billing by the seller is a condition precedent to any obligation of NGP to pay interest. *See Holst v. Guynn*, 696 P.2d 632 (Wyo.1985); 45 AM.JUR.2d, *Interest and Usury* § 88 (1969). The obligation to pay interest in these circumstances must be consistent with the terms of the contract. 5 ARTHUR LINTON CORBIN, A COMPREHENSIVE TREATISE ON THE WORKING RULES OF CONTRACT LAW § 1045 (1964). Our review of the record

compels us to agree with the district court that the contract in this instance is plain and unambiguous and, in accordance with our rules relating to the granting of summary judgments, NGP is entitled to judgment as a matter of law.

CIG seeks reversal of the summary judgment the district court granted contending, seriatim, that either the billing requirement of the contract was satisfied, or genuine issues of material fact are raised with respect to the satisfaction of the billing requirement; the undisputed facts demonstrate NGP was responsible for the delay in billing or there are genuine issues of material fact with respect to that responsibility; the trial court erred in not granting summary judgment to CIG because the submission of invoices (bills) would have been a useless act or at least there is a genuine issue of material fact as to the futility of submitting invoices; it is entitled to interest under the basic principles of equity; and the tender of payment in 1986 on the part of NGP required it to pay interest on a minimum bill for 1986. We address these several contentions in order.

As we pursue the analysis of the CIG contentions, it is necessary to place in context the posture that NGP assumed in this long course of litigation, the latter aspects of which now are before this court. CIG and NGP entered into an agreement pursuant to which NGP was to purchase certain minimum quantities of natural gas from CIG. The agreement provided that, if NGP failed to purchase a certain volume of natural gas, it still would have to pay CIG just as though it had actually purchased that gas. NGP went to FERC to challenge the contractual requirement of minimum purchases, and it was successful in that challenge to a significant degree. NGP never took the position that the contract was not enforceable according to its terms. Instead, it urged FERC to relieve NGP of its contractual obligation for a variety of regulatory and other economic reasons. NGP did not contend that it would not have to pay interest on minimum bills in the face of any regulatory or judicial order to do so. NGP's goal was for the litigation to relieve it of the requirement of minimum purchases of natural gas and, as a product of that relief, it also would be relieved of any obligation to pay interest on the amount of any minimum bills submitted to it.

CIG asserts in its first contention that it fulfilled the terms of the contract because, in the course of the litigation between it and NGP, it identified the damages it was seeking in the form of interest on the minimum bills or minimum daily take. CIG maintains that information was sufficient to fulfill the requirement of a bill under the contract. In its form as a noun, the word "bill" means "a statement in gross of a creditor's claim; statement of account; total amount indicated as due; total charge." In its verbal form, the meaning is "to submit a bill of charges to." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 215 (1986). We do not agree with the rather broad but vague definition CIG urges in its construction of the contract terms. CIG did not submit a bill in any form contemplated by the contract. There is no genuine issue of material fact that needs to be presented to a finder of fact in this regard.

In its next argument, CIG urges the proposition that NGP was responsible for the delay in billing or, alternatively, there were genuine issues of material fact about NGP's responsibility that inhibited the granting of summary judgment in favor of NGP. In this regard, also, we are unable to accept the rather imprecise reading of the contract that CIG urges, and we do not perceive the existence of any facts, which could sustain such a contention. The circumstances are clear. Even though it was not likely NGP would have paid any minimum bill submitted, in light of the pending litigation, that did not make NGP responsible for the failure of CIG to present a bill.

CIG then contends it would have been futile for it to have submitted any bill and, for that reason, it should not have been required to submit a bill in order to be entitled to interest as provided by the contract. The authority referred to by CIG does not support the argument it makes. *See* 5 WALTER H.E. JAEGER, WILLISTON ON CONTRACTS, § 699 (Chapter 25, Excuse of Condition by Promisor's Prospective Non-performance) (3d ed. 1961). In this in-

stance, CIG was not compelled to incur any expense or suffer any detriment in order to comply with the terms of the contract, that is, to submit a bill. NGP did not make any anticipatory repudiation of the contract between it and CIG. What NGP did, in fact, was to refuse to pay the minimum bill, as well as any interest due, until FERC made its ruling that the minimum bill, or some portion of it, really had to be paid. That circumstance was not sufficient to relieve CIG from the obligation to submit the minimum bill according to the contract. There are no genuine issues of material fact requiring the presentation of this issue to a fact finder.

In its penultimate argument, CIG claims that under Colorado law, which it appears both parties agree may he the appropriate choice of substantive law, it is entitled to interest under equitable principles. It would not matter if we were to consider this contention under Colorado law or our law, there is no reason that we have been able to identify to invoke principles of equity in this purely contract action as to which an adequate remedy at law was available. *Yellowstone Sheep Co. v. Ellis*, 55 Wyo. 63, 96 P.2d 895 (1939); *Hoffman v. Colorado State Board of Assessment Appeals*, 683 P.2d 783 (Colo.1984); *People ex rel. Winbourn v. District Court*, Eighth Judicial District, 87 Colo. 316, 287 P. 849 (1930).

In its final argument, CIG urges the effect of a tender of payment of the 1986 minimum bill by NGP on October 26, 1986, during the course of the litigation. CIG submits that, since NGP tendered payment, CIG should be relieved from the submission of a bill for 1986. In response to this argument, we also are unable to agree that this circumstance served to relieve CIG of a plain and unambiguous contractual obligation to submit a bill to NGP.

The summary judgment entered by the district court is affirmed.

URBIGKIT, J., dissents without an opinion.