2007 WY 68

Margot BELDEN and Fish Creek Design, LLC, Appellants (Plaintiffs),

v.

John THORKILDSEN and Stacy Thorkildsen, his wife, Appellees (Defendants).

No. 06–112.

Supreme Court of Wyoming.

April 26, 2007.

Representing Appellants: Richard J. Mulligan, of Mulligan & Owens, LLC, Jackson, Wyoming; Heather Noble, Jackson, Wyoming. Argument by Ms. Noble.

Representing Appellees: David G. Lewis, Jackson, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1] Margot Belden and Fish Creek Design, LLC, appeal a judgment entered in favor of John Thorkildsen. They claim that the district court erred when it concluded that Mr. Thorkildsen was not liable to Ms. Belden, or the LLC, for debt incurred when he purchased his interest in the business. Because we find that the district court's decision was premised upon an improper application of the parol evidence rule, we reverse and remand.

## ISSUE

[¶ 2] Although several issues were raised by the parties, we find one issue dispositive:

Did the district court err by refusing to consider evidence of an agreement between Ms. Belden and Mr. Thorkildsen concerning the indebtedness incurred for the purchase of Mr. Thorkildsen's partnership interest?

## FACTUAL BACKGROUND

[¶ 3] Margot Belden and her son purchased an interior design business located in Wilson, Wyoming, in June 1999. They owned the business as common law partners with Ms. Belden owning a 70% interest and her son 30%. Mr. Thorkildsen was an employee of the business working as an interior designer for both the previous owner and subsequently for Ms. Belden and her son.

[¶ 4] In June 2000, Ms. Belden approached Mr. Thorkildsen, giving him the opportunity to purchase her son's interest in the business for $180,000. Mr. Thorkildsen and his wife signed a buyout agreement, which mentioned financing for the $180,000, stating:

It is hereby agreed that John and Stacy Thorkildsen will purchase the 30% ownership of Fish Creek Interiors & Gifts currently owned by Sean O'Brien for $180,000.00, cash. This is due and payable upon completion of the financing provided by Bank of Jackson Hole, but no later than July 1, 2000.

Ms. Belden and Mr. Thorkildsen subsequently signed a note with the bank pledging assets of the partnership, as well as some of Ms. Belden's property as collateral. The partnership paid every monthly payment to the bank for the remaining life of the partnership.

[¶ 5] Approximately one year later, in April 2001, Fish Creek Interiors and Gifts pooled assets with another design company, forming Fish Creek Design, LLC. The new LLC had four members: Ms. Belden, Mr. Thorkildsen, Cheryl Wery and Jacque Jenkins. The promissory note with the bank was paid off and the debt was retired. The funds to pay the note came from a new note taken in the name of the LLC and was signed by all of the members of the LLC.

[¶ 6] In May 2002, Mr. Thorkildsen was fired. Thereafter, he formed a new design company and store operating in Jackson. The remaining three members of the LLC sold the retail portion of Fish Creek Design, LLC in the summer of 2002. Eventually, under pressure from the bank, Ms. Belden was forced to pay off the remaining balance of the loan in order to protect her assets that had been pledged as security for the loan.

[¶ 7] Ms. Belden initiated litigation against Mr. Thorkildsen and his wife claiming that she was entitled to recover amounts that were never paid by Mr. Thorkildsen to purchase his interest in the business and damages resulting from Mr. Thorkildsen's appropriation of clients from the business.[1] In response, the Thorkildsens argued that

---

1. The complaint alleges several counts: (1) Breach of Contract, based upon the non-compete clause of the LLC's operating agreement; (2) Intentional Interference with Prospective Economic Advantage, based upon interference with the economic relationship between the LLC and its clients; (3) Breach of Fiduciary Duty, based upon Mr. Thorkildsen's competition with the LLC while he was still a member; (4) Money owed on the Promissory Note and Buyout Agreement, claiming the Thorkildsens owe Ms. Belden $92,000 and the LLC $34,000; and (5) Attorneys' Fees and Costs, based upon breach of the LLC's operating agreement.

when the original promissory note was paid by the LLC, Mr. Thorkildsen was released from his obligation and was no longer personally liable because he signed the second note as a member of the LLC, and that Mrs. Thorkildsen should be dismissed because she was not involved other than signing the original purchase agreement. A bench trial was held and after Ms. Belden's case in chief, Mrs. Thorkildsen was dismissed as a party without objection from the plaintiff.

[¶ 8] At trial, Ms. Belden testified about the financing arrangements for Mr. Thorkildsen's purchase of her son's interest in the business. According to her testimony, Mr. Thorkildsen could not make the $3,870.16 monthly payment towards the note. She agreed that the business would make those payments and Mr. Thorkildsen would repay the debt with any future bonuses and commissions he received. She also testified that this debt was carried on the company's financial records as an account receivable due from Mr. Thorkildsen and that the loan for the $180,000 would not have been consummated by the Bank unless she personally guaranteed it.

[¶ 9] Mr. Thorkildsen also testified about the financing arrangements for his purchase of Ms. Belden's son's interest in the company. He testified that he agreed he would apply any future commissions and bonuses towards the note. He admitted that even though he may have received a commission in 2000, he has not repaid any portion of the loan. To explain his failure to make any payments, Mr. Thorkildsen claimed that Ms. Belden gifted the 30% interest in the partnership to him.

[¶ 10] The district court found that Mr. Thorkildsen was not personally liable for the original $180,000 debt without resolving the dispute of whether the ownership interest was a gift. The court relied upon the parol evidence rule in rejecting Ms. Belden's contention that Mr. Thorkildsen orally agreed to repay the debt with commissions and bonuses. The court found in favor of Mr. Thorkildsen on all counts and awarded him attorney's fees. This appeal followed.

## STANDARD OF REVIEW

[¶ 11] Following a bench trial, this court reviews a district court's findings and conclusions using a clearly erroneous standard for the factual findings and a *de novo* standard for the conclusions of law. *Piroschak v. Whelan*, 2005 WY 26, ¶ 7, 106 P.3d 887, 890 (Wyo.2005) (citing *Hansuld v. Lariat Diesel Corp.*, 2003 WY 165, ¶ 13, 81 P.3d 215, 218 (Wyo.2003) and *Rennard v. Vollmar*, 977 P.2d 1277, 1279 (Wyo.1999)).

> The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-weighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

*Piroschak*, ¶ 7, 106 P.3d at 890. Findings may not be set aside because we would have reached a different result. *Harber v. Jensen*, 2004 WY 104, ¶ 7, 97 P.3d 57, 60 (Wyo. 2004). Further,

> we assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it. We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law.

*Id.* (quotation marks omitted).

## DISCUSSION

[¶ 12] After trial, the parties submitted proposed findings of fact and conclusions of law. In her proposed findings, Ms. Belden claimed that her signature and pledge of collateral for the $180,000 note was only to facilitate the financing of the buyout agreement signed by the Thorkildsens. She as-

serted that Mr. Thorkildsen was to repay the loan from future bonuses, commissions, and profit sharing distributions paid to him, pointing to his testimony to that effect. She also requested that the district court find that neither she nor the partnership made a gift to Mr. Thorkildsen.

[¶ 13] Mr. Thorkildsen argued that he was not personally liable for any of the debt satisfied by Ms. Belden. He urged the district court to find that his liability on the $180,000 note was extinguished when it was paid, via refinancing and assumption by the LLC. As to that subsequent debt, he relied upon his signature as a member of the LLC to disclaim personal liability for any of the underlying debt. Mr. Thorkildsen asked the district court to disregard any promise he may have made to repay the $180,000 debt, relying upon the parol evidence rule. He proposed the following conclusion of law:

> The Court will not consider a contrived ambiguity in a written instrument such as the modification added to Exhibit C, that this was a "John Thorkildsen Loan," as grounds to considering parol evidence. Moreover, Plaintiff Margot Belden's testimony that she had a side-deal with John Thorkildsen, which contradicted the unambiguous terms of the notes, cannot be considered by the Court. . . .

The district court essentially adopted this conclusion of law proposed by Mr. Thorkildsen.

[¶ 14] In reliance upon the parol evidence rule, the district court disregarded Ms. Belden's testimony concerning a separate agreement for repayment of the debt and did not determine whether the partnership interest was a gift. Ms. Belden contends that the district court misapplied the parol evidence rule. She claims that there was no contradiction between the notes and the separate agreement she had with Mr. Thorkildsen. In essence, Ms. Belden claims that the first note was to pay for Mr. Thorkildsen's purchase of her son's partnership interest, the second note was to pay off the balance of the first note, and the separate agreement was to reimburse Ms. Belden and/or the business for repayment of the loans.

[¶ 15] Mr. Thorkildsen's position is that because the first note was discharged by the second note and because the second note was signed by the managers of the LLC in their managerial capacities, there could be no personal liability on the note to either the bank or the other managers or members of the LLC. Mr. Thorkildsen cites Wyo. Stat. Ann. § 34.1–3–402(b)(i) (LexisNexis 2005), which provides, "If the form of the signature shows unambiguously that the signature is made on behalf of the represented person who is identified in the instrument, the representative is not liable on the instrument." He also relies upon Wyo. Stat. Ann. § 17–15–113 (LexisNexis 2005), which states, "Neither the members of a limited liability company nor the managers of a limited liability company managed by a manager or managers are liable under a judgment, decree or order of a court, or in any other manner, for a debt, obligation or liability of the limited liability company." Mr. Thorkildsen argues that a "side deal" making him liable to Ms. Belden, or the LLC, would contradict the statutes and the terms of the note.

[¶ 16] The parol evidence rule generally states that the intent of the parties to a contract or instrument is to be determined solely from the language of the instrument and extrinsic evidence may be examined only when the language is ambiguous. *Burk v. Burzynski*, 672 P.2d 419, 423 (Wyo. 1983); *Amoco Production Company v. Stauffer Chemical Company of Wyoming*, 612 P.2d 463, 465 (Wyo.1980). However, we depart from the parol evidence rule if the evidence is used to establish a separate and distinct contract, a condition precedent, fraud, mistake, or repudiation. *Applied Genetics v. First Affiliated Securities*, 912 F.2d 1238, 1245 (10th Cir.1990); *Western Nat'l Bank of Lovell v. Moncur*, 624 P.2d 765, 770–71 (Wyo.1981). Evidence of an oral agreement is considered if the oral agreement does not vary the terms of the writing, or if it is "separate and distinct from, and independent of, the written instrument." *Applied Genetics*, 912 F.2d at 1246 (quoting *Moncur*, 624 P.2d at 771 and citing *Allen v. Allen*, 550 P.2d 1137, 1141 (Wyo.1976) and *Cordova v. Gosar*, 719 P.2d 625, 640–42 (Wyo.1986)). In other words, the parol evidence rule "does

not affect a purely collateral contract distinct from, and independent of, the written agreement, even though it relates to the same general subject matter and grows out of the same transaction, if it is not inconsistent with the writing." *Moncur*, 624 P.2d at 770–71.

[¶ 17] Ms. Belden argues that the separate agreement was independent of the two notes, only relating to the same subject matter in that it required reimbursement to the business and Ms. Belden for repayment of the notes. We agree. The evidence Ms. Belden presented of a separate agreement between herself and Mr. Thorkildsen did not vary the terms of the notes and was consistent with the notes. The clear intent of the $180,000 note was to finance the buyout agreement signed by the Thorkildsens. On its face, the buyout agreement obligated Mr. Thorkildsen to pay $180,000 for the partnership interest. It is not disputed that he received that interest in the partnership and that he never paid the $180,000 debt. The dispute between the parties does not concern the terms of the notes with the bank, but rather, whether there was a separate, shared intent that Mr. Thorkildsen be ultimately responsible for the financed debt. This is the type of agreement that is contemplated by the separate agreement exception to the parol evidence rule. *See Moncur*, 624 P.2d at 771–72. Therefore, the district court erred in refusing to consider evidence regarding the separate agreement.

[¶ 18] Additionally, we find it appropriate to comment upon an issue likely to arise upon remand. *Koontz v. South Superior*, 716 P.2d 358, 362 (Wyo.1986). Mr. Thorkildsen asked the district court to find that Ms. Belden was not an accommodation party to the note. He recognized that if Ms. Belden held that status, she may have had recourse against Mr. Thorkildsen for satisfying the debt. An accommodation party who pays the debt on the instrument is entitled to reimbursement from the accommodated party. Wyo. Stat. Ann. § 34.1–3–419(e) (LexisNexis 2005). The question of whether a person is an accommodation maker is a question of fact. Wyo. Stat. Ann. § 34.1–3–419 cmt. 1, 3 (LexisNexis 2005).

[¶ 19] The district court did not make any findings regarding Ms. Belden's status as an accommodation maker. While the district court may have found it unnecessary to reach the issue, a corrected view of the parol evidence in this case may necessitate a different analysis. Courts examine a number of factors in determining a party's status as an accommodation maker. *See Narans v. Paulsen*, 803 P.2d 358, 361–62 (Wyo.1990) (citing cases). When the status is not readily apparent from the face of the instrument, parol evidence is admissible to establish the intentions of those concerned. *Id.*, 803 P.2d at 361. Accordingly, the existence of an agreement between Ms. Belden and Mr. Thorkildsen may impact Ms. Belden's status as an accommodation party.

### CONCLUSION

[¶ 20] Evidence of the parties' agreement regarding repayment of the debt incurred for Mr. Thorkildsen's partnership interest should have been considered by the district court. This evidence fits squarely within exceptions to the parol evidence rule allowing examination of evidence of oral agreements that are collateral to, and independent of, the written contracts and which allow examination of the parties' intentions as to accommodation party status. Therefore, we conclude that the district court erred when it did not consider evidence of a separate agreement regarding repayment between Ms. Belden and Mr. Thorkildsen.

[¶ 21] We reverse and remand for further proceedings consistent with this opinion.

HILL, Justice, dissenting.

[¶ 22] I respectfully dissent because I do not agree that the resolution of this case should be decided on how, or if, the parol evidence rule should be applied to the circumstances of this case. Because these parties mutually adopted a mode of performing their contract that differed almost in its entirety from the terms of that contract, I would affirm the basic findings of the district court and its conclusions of law. My perception of the trial court's findings is that it found Margot Belden's testimony to be untruthful and John Thorkildsen's to be, per-

haps, just somewhat more believable than that of Belden. Thus, the district court opted to rely principally on the documentary evidence and less on the "testimony." Where I have set out facts below, I do so because they appear to be undisputed facts that do not really go to the issues to be decided by the trial court or by this Court. The only reliable evidence presented at the "trial" in this case were the written documents that controlled the relations of the parties.

[¶ 23] As I perceive the record on appeal in this case, in late 1998 or early 1999, Margot Belden and her son Sean O'Brien, as "partners," bought a business known as Fish Creek Interiors and Gifts (at that time "they" paid $500,000.00 for the business and $2,000,000.00 for the building it was housed in). On June 5, 2000, John Thorkildsen, at Belden's urging, agreed to purchase Sean O'Brien's 30% interest in Fish Creek Interiors and Gifts. Thorkildsen had been an employee of that business for many years. He was paid a salary of $70,000.00 a year by Belden. O'Brien's 30% interest was valued at $180,000.00, because the basis in the "business" portion of their investment had increased from $500,000.00 to $600,000.00 in the year or so they had owned it. Thorkildsen had no money with which to purchase that interest, and so Belden took Thorkildsen to the Bank of Jackson Hole, where she and Thorkildsen borrowed $180,000.00 (posting Belden's property as collateral), so that Thorkildsen could pay O'Brien for his interest. Payments of $3,870.16 a month ($46,441.92 annually) were made on that loan until, on June 8, 2001, it was paid off in its entirety. At that time the "partnership" disappeared, and Fish Creek Design LLC, a documented business organization, came into being. The money to pay off the earlier loan that bound both Belden and Thorkildsen was borrowed by the new LLC in the amount of $151,781.37. The following individuals signed that contract: "Margot Belden, FIN MNGR; Cheryl Wery, D MNGR; John Thorkildsen, RET MNGR; and Jacqeline Jenkins, BUS MNGR." The payments on this loan were $3,623.44 a month, and payments were made until, on February 28, 2003, the loan was paid off in full.

[¶ 24] Thorkildsen conceded that he had never personally made any of the payments. It appears that most of the payments were made by one or other of the Fish Creek entities and both Belden and Thorkildsen were members of those entities until Thorkildsen was fired on May 9, 2002. To the extent Thorkildsen ever owned any interest in either of the Fish Creek entities, he never received any payment for it. Belden and Thorkildsen each had a "story." However, giving any particular credence to the details of either of those stories would do a disservice to the law governing contracts and business relations in general.

[¶ 25] The parol evidence rule has been described thus:

It is at once perhaps the simplest substantive rule of contract law to state and to understand in its abstract foundational purpose, but undoubtedly the most difficult rule to apply to concrete fact situations. Generally stated, this rule prohibits the admission of extrinsic evidence of prior or contemporaneous oral agreements, or prior written agreements, to explain the meaning of a contract when the parties have reduced their agreement to an unambiguous integrated writing. The rule springs from several sources. It reflects and implements the legal preference, if not the talismanic legal primacy, historically given to writings. It effectuates a presumption that a subsequent written contract is of a higher nature than earlier statements, negotiations, or oral agreements by deeming those earlier expressions to be merged into or superseded by the written document. Finally, it seeks to achieve the related goals of insuring that the contracting parties, whether as a result of miscommunication, poor memory, fraud, or perjury, will not vary the terms of their written undertakings, thereby reducing the potential for litigation.

11 Williston on Contracts, *Parol Evidence Rule*, § 33:1, at 540–50 (4th ed.1999).

[¶ 26] Continuing, Williston states:

For purposes of the rule, "extrinsic evidence" includes any evidence that seeks to prove an agreement or understanding aris-

ing out of the parties' words or conduct spoken or engaged in prior to or contemporaneous with the execution of the final, fully integrated written agreement. Such evidence, according to the traditional approach of the vast majority of courts, may not be used to explain, vary, supplement, or contradict unambiguous language appearing in the contract.

11 Williston on Contracts, *supra*, § 33:1, at 550–51.

[¶ 27] I am concerned that, in elevating these extremely crude contractual agreements that were virtually ignored by the parties for years and by infusing these very informal court proceedings with greater substance than they deserve, so as to make this a case that merits the application of the parol evidence rule, we run the risk so eloquently identified in the Williston treatise:

The fact that the parol evidence rule may be stated simply belies a perplexing and confusing number of difficulties in its application. As has been seen, the facially simple rule states that, absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements. Beneath this facial simplicity, however, is, as one federal court has declared, a "morass": "To even the most courageous Pickwickian, the parol evidence rule must seem a treacherous bog in the field of contract law. Interspersed in this quagmire are quicksand-like state court decisions, which appear equitable in specific situations but remain perilous for legal precedent. Federal courts, attempting to clarify, have sometimes but confused and compounded muddled interpretation of the axiom."

11 Williston on Contracts, *supra*, § 33:4, at 569–70.

[¶ 28] We have held that: "As a general rule, if the parties mutually adopt a mode of performing their contract differing from its strict terms or if they mutually relax the contract's terms by adopting a loose mode of executing them, neither party can go back upon the past and insist upon a breach because the contract was not fulfilled according to its letter." *Schuler v. Community First Nat. Bank,* 999 P.2d 1303, 1305 n. 1 (Wyo. 2000) (citing *Quin Blair Enterprises, Inc. v. Julien Constr. Co.,* 597 P.2d 945, 951 n. 6 (Wyo.1979)).

[¶ 29] Parties to a contract are free to ignore the terms of their contracts, but they must also understand that they may bear the consequences of such disregard when breach becomes a fact of life. If parties mutually adopt a mode of performing their contract differing from its strict terms or if they mutually relax its terms by adopting a loose mode of executing it, neither party can go back upon the past and insist upon a breach, because it was not fulfilled according to its letter. Here there was never any mutual agreement to vary any terms. There was unilateral disregard of terms. There were terms neither party ever seemed to be cognizant of or understand. However, there was never any mutual agreement to do anything different, and the parties must be held bound to their agreements. It is in just such instances as this that it becomes most important to read and strictly construe contracts. *Quin Blair Enterprises, Inc. v. Julien Constr. Co.,* 597 P.2d 945, 951 n. 6 (Wyo. 1979); *also see Collins v. Finnell,* 2001 WY 74, ¶ 12, 29 P.3d 93, 98 (Wyo.2001); *Colorado Interstate Gas v. Natural Gas Pipeline,* 842 P.2d 1067, 1070 (Wyo.1992).

[¶ 30] I would affirm the district court's judgment.