2008 WY 129

Orlan O. GARWOOD and Carol A. Jones as Trustees of the W.J. Garwood and Mildred E. Garwood Family Trust, Appellants (Defendants),

v.

William J. GARWOOD, individually, Appellee (Plaintiff),

and

Judy K. Kechter, as Trustee of the W.J. Garwood and Mildred E. Garwood Family Trust, Appellee (Defendant).

No. S–07–0235.

Supreme Court of Wyoming.

Oct. 22, 2008.

Representing Appellants: Scott W. Meier of Hathaway & Kunz, P.C., Cheyenne, Wyoming; and Howard V. Scotland III * of Hickey & Evans, LLP, Cheyenne, Wyoming. Argument by Mr. Meier.

Representing Appellees: Frank J. Jones of Wheatland, Wyoming, for Appellee William J. Garwood. No appearance for Judy Kechter.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶1] On May 2, 2006, Appellee, William J. Garwood (Mr. Garwood), initiated this lawsuit in order to have the district court direct the Appellants, who are the Trustees of the W.J. Garwood and Mildred E. Garwood Trust (Family Trust), to pay to him a sum of money sufficient to provide for his support in the manner to which he was accustomed. The Appellants are two of his three children, Carol Jones and Orlan Garwood. Judy Kechter was named as a defendant below because she is a Trustee, but she has aligned herself with her father in these proceedings. The Trust at issue was created by Mr. Garwood and his wife in 1992. Mrs. Garwood died in 2005.

* Order Allowing Withdrawal entered February 29, 2008.

[¶ 2] When Mrs. Garwood died in 2005, the Trust split into a Family Trust and a Marital Trust. As had been the case while Mrs. Garwood was alive, Mr. Garwood continued to treat the assets of the Trusts as his own personal funds, and he did not abide by many of the terms of the Trust documents. He has now expended most of the funds that made up those Trusts in a manner that is contrary to some of the terms of the Trusts. Orlan O. Garwood and Carol A. Jones are the natural children of Mrs. Garwood from a prior marriage. Mr. Garwood adopted them shortly after he married Mrs. Garwood in 1951. A third child, Judy K. Kechter, was born of Mr. Garwood's marriage to Mrs. Garwood.

[¶ 3] In its judgment, the district court settled several matters relating to the Trusts and, in addition, directed the Trustees to ensure that Mr. Garwood receive at least $3,200.00 a month in income. A significant portion of that sum, about $2,000.00, will come from Mr. Garwood's social security benefits and interest he receives on a loan he made to his daughter, Judy Kechter. However, about $1,200.00 will have to come from the assets of the Family Trust at issue here. We will affirm the district court's judgment.

### ISSUES

[¶ 4] Appellants raise these issues:

1. Whether the district court erred in its allocation of Trust Assets between the Marital Trust and the Family Trust.

2. Whether the district court erred in not appointing a corporate trustee as a means to protect remaining trust assets and provide for the professional management of the Family Trust.

Mr. Garwood agrees those are the issues to be decided.

### FACTS AND PROCEEDINGS

[¶ 5] In 1992, Mr. Garwood and Mrs. Garwood bought a Revocable Living Trust "kit" from the Somerset Group of Salt Lake City, Utah. One of the salient findings of the district court was that the Trust at issue here was of no earthly use to the Garwoods because they simply did not have enough assets to reap any of the estate tax benefits that spring from such a trust.[1] Nonetheless, on April 21, 1992, the Garwoods executed the Trust documents and transferred some of their assets to that Trust. Of central concern in this case, is that the Trust included Mr. and Mrs. Garwood's home in Wheatland. Another prominent feature of the district court's findings was that both Mr. and Mrs. Garwood ignored the terms of the Trust and largely used their assets as though the Trust did not exist.

[¶ 6] As noted above, Mrs. Garwood died in 2005. Under Article III of the Trust, that event caused the Trust to divide into two separate trusts, a Marital Trust and a Family Trust. Mr. Garwood was the Trustee of the Marital Trust and the Garwoods' three children were the Trustees of the Family Trust. The assets of the Garwoods were divided between the two Trusts as follows:

B. The *Marital Trust* shall consist of the survivor of the Undersigned's interest in all community property[2] in the Trust Estate, the survivor of the Undersigned's separate property[2] in the Trust Estate, and only such fractional interest in all other property of the first of the Undersigned to die that qualifies for the marital deduction under the Federal Estate Tax law as is necessary to reduce the Federal Estate taxes of the first of the Undersigned to die to the lowest possible amount, after considering and making allowances for all deductions and exemptions and credits including but not limited to any credit available under section 2010 of the Internal Revenue Code of 1986, as amended, pertaining to the unified credit against estate tax, and the value of all other items which pass to or have passed

---

1. At its peak, the Garwoods' estate consisted of assets of about $400,000.00. At the time the Trust was formed, adverse tax consequences did not arise until the estate was over $1,200,000.00 (if both of them were alive) and $600,000.00 (if only one of the two was alive).

2. "Community property" and "separate property" are defined in an amendment to the Trust.

to the survivor of the Undersigned under the provisions of this Trust, by operation of law or otherwise, but only to the extent that such items are includable in the gross estate of the first of the Undersigned to die and are allowable as a marital deduction for Federal Estate Tax purposes. In the sole power and discretion of the Trustees, the payment of said fractional interest may be made wholly or partly in cash or property, which is fairly representative of appreciation or depreciation of all property available to satisfy this provision, as selected by the Trustees; provided, however, that such property so selected to constitute said fractional interest shall be valued at the value thereof as finally determined for estate tax purposes in the estate of the first of the Undersigned to die; provided, also in the event, the assets distributed under this provision as said fractional interest, are subsequently less in value at the time distributed than the value used for Federal Estate Tax purposes, the Trustees shall implement the *Marital Trust,* and shall add thereto from the *Family Trust* qualified assets in an amount sufficient to bring said fractional interest in the *Marital Trust* up to the Federal Estate Tax value; provided, further, that in no event shall there be included in the *Marital Trust* any of the separate assets of the first of the Undersigned to die, or the proceeds of said assets, which will not qualify for the marital deduction for Federal Estate Tax purposes.

C. The *Marital Trust* shall be held by the Trustees [Mr. Garwood], separately in Trust, for the following purposes:

1. The Trustees shall pay to the survivor of the Undersigned, all of the income of this Trust, in monthly or other convenient installments, but at least annually. The Trustees also shall pay as much of the principal of this trust to the survivor of the Undersigned as the survivor may request.

2. Upon the death of the survivor of the Undersigned, the Trustees shall distribute the then-remaining principal and undisbursed income of the **Marital Trust,** if any, to such person or persons, including the estate of the survivor, as the survivor shall appoint. Such appointment shall be made by the survivor amending this **Marital Trust,** or by the survivor referring to and by affirmatively exercising this power of appointment in his or her Last Will and Testament. [Underlining added for emphasis.]

3. Any principal and income of this Trust not effectively appointed by the survivor shall be added at the death of the survivor to the *Family Trust* and shall be held and administered as a part thereof; provided, however, that the Trustees may, in their discretion, first pay from the *Marital Trust* alone, the last illness and funeral expenses and any death taxes of the survivor of the Undersigned.

4. If the survivor of the Undersigned disclaims part or all of the fractional interest in the *Marital Trust* as referred to in this Article the disclaimed property shall be administered immediately according to the terms and conditions, and to the same beneficiaries, as set forth in Article IV, of this Trust Agreement.

D. The *Family Trust* shall contain the balance of the Trust Estate remaining after setting aside all property of the Trust Estate that is included in the *Marital Trust.* The *Family Trust* shall contain, also, any and all interest of the first of the Undersigned to die in any community property held by both of the Undersigned, and not transferred to the *Marital Trust.* From the income and principal of the *Family Trust* only, the Trustees shall pay all of the death taxes, legal expenses, and the expenses of the last illness and funeral of the first of the Undersigned to die; provided, however, no funds received by the Trustee as proceeds from a retirement plan qualified under the Internal Revenue Code shall be available for those purposes. The *Family Trust* shall then be held by the Trustee and used for the following purposes:

1. During the lifetime of the survivor of the Undersigned, the Trustees of the **Family Trust** shall distribute to said survivor such part or all of, first, the net income, and second, the principal of the **Family Trust** as necessary or appropriate

for the health, education, and maintenance of said survivor, and to provide for the support of said survivor in his or her accustomed manner of living, including reasonably adequate health, medical, dental, hospital, nursing and invalidism expenses. Because the Undersigned intend that the properties of the **Family Trust** shall not be includable in the estate of the survivor of the Undersigned for estate tax purposes, the powers herein granted to the survivor of the Undersigned, while serving as a Trustee or Co–Trustee of this Trust Agreement, shall be limited as follows: The survivor of the Undersigned, is hereby specifically restricted from serving directly or indirectly as a Trustee of the **Family Trust,** and shall have no right to determine the amount of any income or principal of the **Family Trust** to be retained or to be distributed to said survivor, or to distribute or manage such, but such determination, distribution, and management shall be made by the Trustee or Trustees ~~serving with the survivor of the Undersigned.~~ [See Amendments, Paragraph 2.] [Underlining added for emphasis.]

2.  Provided however, the survivor of the Undersigned shall have the discretionary power at any time and from time to time during his or her lifetime to direct the Trustees to pay over and distribute an amount of trust income and/or principal to or for the benefit only of the children of the Undersigned and their issue. The survivor shall have a "sprinkling power" with regard to income which shall be limited to a class consisting of the children of the Undersigned and their issue, but the principal (which included profits realized from the sale of any of the trust principal) must be distributed equally, *per stirpes,* to or for the benefit of all the children of the Undersigned. This special power of appointment may be exercised by delivering to the Trustees a writing, duly executed and acknowledged, specifying the amount of income that should be paid over and distributed to the particular child or issue and in what proportions such income shall be paid over and distributed to the particular child or issue and in what proportions such income shall be paid over and distributed, or

if it be principal which is to be distributed, said writing shall specify the amount of principal that should be paid over and distributed.

3.  Notwithstanding anything else to the contrary herein contained in this paragraph, under no circumstances shall the survivor of the Undersigned appoint or have the power to appoint, either directly or indirectly, any ·interest either to the survivor, the survivor's estate, the survivor's creditors or creditors of the survivor's estate, or so as to discharge any legal obligations of the survivor including the survivor's legal obligations of support.

4.  Upon the death of the survivor of the Undersigned, the Trustees shall dispose of the then-remaining principal and income of the *Family Trust* as directed in *Article IV.*

[¶ 7]  After Mrs. Garwood's death, Mr. Garwood was the Trustee of the Marital Trust and the Garwood children were the Trustees of the Family Trust. The neglect by all Trustees to follow the terms of the Trusts continued until this matter arose in 2006.

[¶ 8]  Mr. Garwood has long been disabled and is confined, for the most part, to a wheelchair because of the effects of polio he contracted as a child. After his wife's death, he needed a full-time, live-in caregiver. That person was still providing care for him at the time of the proceedings on review here. Her name is April Petrie and she is fully trained and well-experienced in providing such care. Mr. Garwood was not eligible for assisted living accommodations because he required so much assistance, and his daughter did not want to put him in a nursing home. In 2005, after Mrs. Garwood's death, Judy Kechter convinced her father to move to Cheyenne, where she and her husband resided. The home the Kechters owned was a bi-level and was not suitable to Mr. Garwood's needs. Thus, the Kechters bought a new home that had a total of 4,200 square feet of living space. The main level of the house (2,100 square feet), which was easily accessible to Mr. Garwood, was occupied by him and his live-in caretaker. The basement of the house

(also 2,100 square feet) was occupied by the Kechters.

[¶ 9] The crisis which arose in 2006 was that Mr. Garwood needed money to live on because he had expended all the cash assets that presumably were in the "Trusts," and his income was not sufficient to pay his ongoing expenses. He had about $45.00 in a checking account in Wheatland (which was technically the Family Trust Account, although, in practice, Mr. Garwood had used it as his own). He had never closed that account even though he no longer used it. Mr. Garwood had about $700.00 in a checking account in Cheyenne (which was technically the Marital Trust Account, but both Mr. Garwood and his daughter Judy Kechter could write checks on that account).

[¶ 10] We will detail later where all the money went, but it suffices here to note that Mr. Garwood considered the terms of the Trust "goopy-gull," and he did not abide by them in making expenditures. By 2006, the only additional source of income remaining to Mr. Garwood was the sale of his home in Wheatland (he moved from Wheatland to Cheyenne in 2006 but continued to maintain the Wheatland house). However, a majority of the Trustees of the Family Trust, wherein title to that home resided, would not approve its sale. At this point in time, the essence of the familial relationship was that Mr. Garwood and Judy Kechter were estranged from Orlan Garwood and Carol Jones. Neither Orlan nor Carol appeared at the trial on this matter.

[¶ 11] Thus, on May 2, 2006, Mr. Garwood filed a complaint seeking to have the district court direct the Trustees to pay him the income that he needed to live on, out of the remaining Family Trust asset (i.e., to sell the Wheatland house and reduce it to a liquid asset). On June 6, 2006, the Trustees filed an answer and counterclaim seeking an order that Mr. Garwood be required to repay to the Trusts sums of money that he had expended from them in violation of the terms of the Trusts. The central contentions of the counterclaims were directed at what became of the Trust assets after the death of Mrs. Garwood.

[¶ 12] At the time of her death, the Family Trust supposedly had assets of $268,885.85, as well as the Wheatland house. The largest asset the Garwoods owned was their Raymond James investment account. It was valued at $323,771.69 ($214,000.00 was attributable to the sale of Mrs. Garwood's interest in a family ranch and the remaining $109,771.69 was money jointly put aside by Mr. and Mrs. Garwood). Thus, the Family Trust assets supposedly consisted of Mrs. Garwood's $214,000.00 ranch sale proceeds and one-half of the remainder of the Raymond James Account, $54,885.85 ($268,-885.85).

[¶ 13] Mr. Garwood documented these expenditures from the Family Trust:

| | |
|---|---|
| 1. Mrs. Garwood's final medical and funeral expenses | $34,082.02 |
| 2. One-half of the expenses of the Family Trust in maintaining the Wheatland house. | 13,255.91 |
| 3. Cash distributed by Mr. Garwood to family members (children and grandchildren) | 132,000.00 |
| 4. Distributions to Mr. Garwood under the terms of The Family Trust | 67,670.55 |
| TOTAL: | $247,008.48 |

Theoretically, that left only $21,877.13 remaining in the Family Trust, plus a one-half interest in the Wheatland home. It is conceded by all parties that the $132,000.00 gifts were made by Mr. Garwood to qualify for Medicaid benefits should he require nursing home care—and, of course, none of the residuary beneficiaries refused the gifts.

[¶ 14] In addition, Mr. Garwood expended about $40,000.00 making gifts to friends who helped him at the time his wife died and he moved from Wheatland to Cheyenne, as well as paying for his share of the maintenance/improvements on the Wheatland home. Mr. Garwood also loaned $144,000.00 to his daughter Judy Kechter. The loan was to pay interest "at 3% APR" and was to be used to purchase a "1/2 interest in property at 30 Wycola Road." [3] That loan was unsecured, but required Judy Kechter to make payments to Mr. Garwood of $995.00 a month beginning November 15, 2005 and continuing until October 15, 2020 with a final payment of $391.17. Those payments were deposited in Mr. Garwood's Cheyenne bank account which

---

3. This property was a vacation home/cabin that   was of little or no benefit to Mr. Garwood.

also served as the checking account for the Marital Trust.

[¶ 15] Mr. Garwood's income consisted of the $995.00 monthly payment from Judy Kechter and $952.00 a month from Social Security.

## DISCUSSION

### Standard of Review

[¶ 16] This matter was tried to the district court sitting without a jury:

> Following a bench trial, this court reviews a district court's findings and conclusions using a clearly erroneous standard for the factual findings and a *de novo* standard for the conclusions of law. *Piroschak v. Whelan,* 2005 WY 26, ¶ 7, 106 P.3d 887, 890 (Wyo.2005) (citing *Hansuld v. Lariat Diesel Corp.,* 2003 WY 165, ¶ 13, 81 P.3d 215, 218 (Wyo.2003) and *Rennard v. Vollmar,* 977 P.2d 1277, 1279 (Wyo. 1999)).

> The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-weighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

*Piroschak,* ¶ 7, 106 P.3d at 890. Findings may not be set aside because we would have reached a different result. *Harber v. Jensen,* 2004 WY 104, ¶ 7, 97 P.3d 57, 60 (Wyo.2004). Further,

> we assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it. We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law.

*Id.* (quotation marks omitted).

*Belden v. Thorkildsen,* 2007 WY 68, ¶ 11, 156 P.3d 320, 323 (Wyo.2007).

[¶ 17] In addition to contending that some of the court's fact-finding is clearly erroneous and that some of its conclusions are contrary to law, it appears that Orlan Garwood and Carol Jones also contend that the district court's judgment is, in part, an abuse of discretion. For example, they contend that the district court's failure to require Mr. Garwood to return the $144,000.00 that he loaned to Judy Kechter constitutes an abuse of discretion. We recently restated our definition of an abuse of discretion like this: The core of our inquiry must reach the question of the reasonableness of the choice made by the trial court. Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *FML v. TW,* 2007 WY 73, ¶ 8, 157 P.3d 455, 459 (Wyo.2007).

[¶ 18] The district court's decision letter is brief and direct in resolving the issues at large in this appeal:

> The handling of this matter by Mr. and Mrs. Garwood and the trustees has resulted in a mess.

> [Mr. Garwood] and his wife did not need a trust for tax purposes and [they] ignored much of the trust documents. All funds were co-mingled up to the present. It is clear that [Mr. Garwood] and his wife wanted and intended for the survivor to have the benefit of their estate until death. If anything remained, then the children could divide up the rest.

> The trustees, in particular Ms. Jones and Mr. [Orlan] Garwood generally paid little attention to their parents and even less to being trustees.

> Nevertheless, trust documents were signed, the family residence was put into trust, and at some point in time the joint retirement account was placed in trust. Now the bank account of [Mr. Garwood] is

apparently in a trust account. The parties agree that there is a trust.

The evidence before the Court is in dispute. However, I will generally find in favor of [Mr. Garwood] and adopt the evidence set forth in [his] exhibits. I must reiterate that Mr. and Mrs. Garwood had a long marriage and it was their intention that their estate would be used by the survivor until death and that any remaining moneys divided by the children. That clearly was the intent of the trust.

It was also apparent that the trustees['], Jones and [Orlan] Garwood, minimal interest in this matter is wholly financial while the trustee, Judy Kechter, is and has been concerned with her parents' welfare.

The Family Trust, as of the date of death of Mrs. Garwood, should have had approximately $269,000 as set forth in [Mr. Garwood's] Exhibit 12. From that was properly deducted $34,000 representing Ms. Garwood's medical and funeral expenses in 2004 through 2005. Also deducted from that amount was approximately $13,000 for ½ the expenses of the family residence. Also deducted was $132,000 paid to the children and to which all trustees agreed.

That leaves approximately $89,547.92 in what should have been the family trust.

However, from that amount should be deducted $67,670 which should have been distributed to [Mr. Garwood] by the trustees for his necessities of life. Thus, as set forth in Exhibit 12, $21,877.37 should still be in the family trust.

Therefore, the family residence should be sold and ½ of the proceeds placed in the family trust. $21,877.37 of the other ½ should be placed in the family trust and the balance in the marital trust.

Any amount owing on the loan to Judy Kechter is part of the marital trust.

Any moneys remaining at the time of [Mr. Garwood's] death shall be distributed according to the trusts.

[Mr. Garwood] and Ms. Kechter are ordered to make a full accounting of all trust moneys since Mildred Garwood's death.

The trustees shall provide [Mr. Garwood] with enough money so that he is receiving $3,200 per month taking into account the $2,000 he is already receiving.[4]

[¶ 19] As noted above, Mr. Garwood initiated this action because he needed additional income, and the only potential source of such income was to sell the Wheatland home that was titled in the name of the Trustees of the Family Trust. Trustees Carol Jones and Orlan Garwood refused to do that. Instead they counterclaimed against their father asserting that they could not provide further support to their father because he had improperly expended most of the Trust's assets. In addition, they asked the district court to require their father to return "improperly obtained assets." [5]

[¶ 20] In this appeal, they contend that the district court erred in allocating assets between the Family Trust and the Marital Trust. Orlan Garwood and Carol Jones also asked the district court to appoint a corporate trustee in place of the Trustees named by the Trust itself. The district court declined to do that, and they claim the district court was also in error in that regard. They also contend that the allocation of identifiable assets between the Family Trust and the Marital Trust is not in keeping with the terms of the Trust documents and constitutes an abuse of discretion. Likewise, they contend that the district court's refusal to appoint a corporate trustee is an abuse of discretion.

***Allocation of Assets***

[¶ 21] It is contended by Orlan Garwood and Carol Jones that the district

---

**4.** Mr. Garwood's list of expenses was very detailed. His most significant expenses were: $1,040.00 a month for his caregiver; $860.66 rent to his daughter Judy; $325 spending money (e.g., meals out, entertainment, clothing and personal items, gasoline); $297 for medical/pharmacy expenses; $275 for food; $150 for vitamin supplements that he had taken for years; utilities $140; phone and cable TV $128.87.

**5.** The gravamen of this claim was that Judy Kechter should be required to refinance the $144,000.00 loan and return that money to the Family Trust.

court, and this Court, must confine its search for an answer to the question of how the assets are to be apportioned between the two Trusts, to the Trust documents themselves, and that the Trust documents do not permit the allocation fashioned by the district court. See *Kerper v. Kerper*, 780 P.2d 923, 934 (Wyo.1989). We have held that parties making an agreement are presumed to know the law and to contract with reference to the law. *Walliker v. Escott*, 608 P.2d 1272 (Wyo.1980). Moreover, our precedents counsel that the parties to a contract are presumed to know its terms. *Czapla v. Grieves*, 549 P.2d 650 (Wyo.1976). Furthermore, it is contended that a failure of the courts to give full recognition to the terms of these Trusts will frustrate Mildred Garwood's estate planning scheme. Moreover, in its Judgment the district court failed to take into account the interests of the residuary beneficiaries. It is the contention of Orlan Garwood and Carol Jones that Mr. Garwood used $242,303.00 from the Family Trust in violation of the terms of the Trust and he must reimburse the Trust for those amounts. In addition, Mr. Garwood should reimburse the Family Trust for the $31,405.00 that Mr. Garwood used to pay for his wife's final illness and funeral expenses. It is also claimed that the district court erred in allowing Mr. Garwood credit for $67,670.00 for living expenses because it did not take into account his monthly income from other sources during that period of time. Finally, they contend that Judy Kechter must refinance the loan made to her by her father and then her father can use that money to repay the Family Trust.

[¶ 22] We conclude that the district court's findings of fact are not clearly erroneous and its application of the law to these circumstances is likewise not erroneous. The Garwoods had the misfortune to fall victim to an itinerate hawker of "fill-in-the-blank," "one-size-fits-all," trust forms. The materials were ill-suited to the Garwoods' needs and have served to squander a significant portion of their hard-earned life savings on legal proceedings and attorney's fees (we are given to understand from the briefs that the Trusts have paid over $49,000.00 in attorney's fees incurred by Orlan Garwood and Carol Jones, and that there is only slightly more than $16,000.00 left in the Family Trust). Clearly there is no pot of gold at the end of the rainbow for anyone involved in this litigation, most certainly not for the 84–year–old Mr. Garwood who is dependent on the income from the Trust to eke out his subsistence standard of living for the remainder of his days.

[¶ 23] The district court has fashioned a suitable and practical resolution to the problems brought before it:

> ... [T]he court possesses and frequently exercises the power, on the application of the trustee or one or more beneficiaries, to modify the terms of the trust in order to effectuate the accomplishment of the purposes of the settlor. Where administrative provisions handicap the trustee, or the trustee lacks an essential power, the court frequently releases the trustee from the objectionable provision, or grants the needed authority, or otherwise changes the trust as to methods of operation, so as to enable the trustee to achieve the primary purposes of the settlor. Statutes in many states authorize the court to modify or terminate the trust on a finding that the fulfillment of the settlor's purpose has become impossible or impracticable.

Mary F. Radford and George Gleason Bogert, *The Law of Trusts and Trustees* § 994, at 182–86 (2006); *State v. Underwood*, 54 Wyo. 1, 86 P.2d 707, 725 (1939); *In re Joint Eastern and Southern Districts Asbestos Litigation*, 878 F.Supp. 473, 536–540 (E.D.N.Y and S.D.N.Y.1995); *and see* Wyo. Stat. Ann. §§ 4–10–105(a)(iv); 4–10–106, 4–10–201; 4–10–413, 4–10–415, 4–10–416 (LexisNexis 2007). It is not clear from the record below exactly which of its statutory, common law or equitable powers the district court relied upon in deciding this case, but it suffices here to note that any one or more of them could form a solid basis for the district court's resolution of this case.

[¶ 24] In summary, we conclude that the district court's factual findings are not clearly erroneous, and its disposition of the issues raised herein is sound as a matter of law.

*Appointment of Corporate Trustee*

[¶ 25] The district court's judgment simplified the role of the Trustees considerably. They really have no responsibilities beyond sending Mr. Garwood a check once a month in the sum of approximately $1,200.00. If the Trust has not been exhausted at the time Mr. Garwood dies, the Trustees are only required to divide the Trust residue into three equal parts and convey them to the Garwood children or their heirs. Orlan Garwood and Carol Jones demonstrated no need for the district court to alter the terms of the Trust with respect to who should serve as Trustees.

[¶ 26] Moreover, Orlan Garwood's and Carol Jones' contention that the district court abused its discretion in declining to appoint a corporate trustee is not supported by cogent argument or pertinent authority, and we will not consider it further. We conclude that, on the face of the record on appeal before us, the district court committed no error in denying the motion for the appointment of a corporate trustee.

[¶ 27] We take note that Mr. Garwood's brief indicates that there is continuing litigation over matters associated with this case, and a continuation of misconduct by Orlan Garwood and Carol Jones with respect to their obligations as Trustees. If that is, indeed, the case, the district court should resolve those additional matters expeditiously and in conformance with the spirit and the letter of this opinion.

### CONCLUSION

[¶ 28] The judgment of the district court is affirmed in all respects.

VOIGT, Chief Justice, specially concurring.

[¶ 29] I concur in the result reached by the majority, but I think both the majority opinion and the specially concurring opinion of Justice Burke go too far in addressing the issue of whether or not equity and the common law remain in the arsenal of the district court when faced with questions involving modification of a trust. The majority opinion concludes that the district court retains broad equitable and common law powers to modify a trust, which interpretation may be consistent with Wyo. Stat. Ann. § 4–10–106 (LexisNexis 2007). *See supra* ¶ 23. In his specially concurring opinion, Justice Burke concludes that the modification provisions of the Uniform Trust Code, such as those found in Wyo. Stat. Ann. § 4–10–413(a) (LexisNexis 2007), preempt the field, leaving no room for modification under equity or the common law. *See infra* ¶ 33. That is certainly a reasonable argument under our rules of statutory construction.

[¶ 30] I would not try to answer this question in this case because the majority opinion's result can be obtained without venturing that far. Under the facts presented, Wyo. Stat. Ann. § 4–10–413(a) justifies the district court's conclusion. That is all that has to be said.

BURKE, Justice, specially concurring.

[¶ 31] I concur with the result reached by the majority and agree with the conclusion that the factual findings of the district court were not clearly erroneous. The district court's allocation of assets and liabilities between the family and marital trusts was within the proper exercise of the court's discretion as restricted by the language of the trust documents. I write separately, however, because I question the majority's reliance on common law principles as support for the authority of the district court to modify a trust agreement.

[¶ 32] The majority opinion suggests that a court may modify the terms of a trust pursuant to the court's statutory authority and its equitable or common law powers. *Supra*, ¶ 23. The Uniform Trust Code, as adopted in Wyoming, allows modification under specific circumstances. *See* Wyo. Stat. Ann. §§ 4–10–411 through –417. The majority specifically references Wyo. Stat. Ann. § 4–10–413, which states in pertinent part:

(a) The court may modify the administrative or dispositive terms of a trust or terminate the trust if, because of circumstances not anticipated by the settler, modification or termination will further the purposes of the trust. To the extent practicable, the modification shall be made in

accordance with the settlor's probable intention.

[¶ 33]  Another provision of Wyoming's Uniform Trust Code, Wyo. Stat. Ann. § 4–10–106, states that "[t]he common law of trusts and principles of equity supplement this act, *except to the extent modified by this act or another statute of this state.*" (Emphasis added.)  When the provisions of Wyoming's Uniform Trust Code are considered *in pari materia,* it would appear that the common law relating to modification of trust agreements has been statutorily preempted. I disagree with the majority opinion to the extent that it suggests otherwise.