2005 WY 26

**Richard S. PIROSCHAK, Appellant (Defendant),**

v.

**William T. WHELAN, Appellee (Plaintiff).**

**No. 04–51.**

Supreme Court of Wyoming.

March 1, 2005.

Representing Appellant: David G. Lewis, Jackson, Wyoming.

Representing Appellee: James K. Lubing and Carter H. Wilkinson, Jackson, Wyoming. Argument by Mr. Wilkinson.

Before HILL, C.J., and GOLDEN, KITE, and VOIGT, JJ., and SULLINS, D.J.

GOLDEN, Justice.

[¶ 1] In this appeal, Appellant Richard S. Piroschak, the buyer of real estate from Appellee William T. Whelan, appeals from a judgment in favor of Whelan finding that Piroschak had breached the contract to purchase real estate and denying his claims of fraud and deceit. That judgment ordered Piroschak to pay over $170,000 in damages and attorney fees and, now on appeal, Piroschak contends that neither the breach nor damages were proved at trial by adequate evidence.

[¶ 2] We reverse and remand for new trial.

## ISSUES

[¶ 3] Piroschak presents the following issues on appeal:

1. Whether the language of the contract and the evidence presented at trial supported the trial court's legal conclusion that the appellant breached the Contract to Buy and Sell Real Estate?

2. If there were a breach of contract by the appellant, did the appellee prove its damages with competent testimony and reasonable certainty, both with regard to the type and value of the damages?

Whelan responds with this statement of the issues:

A. Whether Appellant's issues regarding waiver and excuse of performance should be dismissed because they were raised [for the] first time on appeal.

B. Whether Appellant's issues regarding waiver and excuse of performance should be affirmed in Appellee's favor due to a lack of cited pertinent authority as required by W.R.A.P. 7.01.

C. Whether the District Court's finding that Appellant materially breached the contract for the purchase of real property was inconsistent with the evidence, clearly erroneous, or contrary to the great weight of the evidence, and contrary to the law of Wyoming.

D. Whether the District Court's determination of damages as a result of Appellant's breach of contract and injury to Appellee's property was inconsistent with the evidence, clearly erroneous, or contrary to the great weight of the evidence, and contrary to the law of Wyoming.

## FACTS

[¶ 4] The parties entered into the contract in April of 1997 for Piroschak to buy property from Whelan. Whelan had previously operated the property as a bed and breakfast business in Alta, Wyoming, but had not done so in the previous fifteen months and was selling the property as a residence. Some limited financial information was made available to Piroschak; however, the purchase contract specifically provided that Whelan neither warranted nor guaranteed any potential income. The parties agreed to a sales price of $447,500, and Piroschak paid a nonrefundable deposit of $15,000. Under

the contract, Piroschak had until May 18, 1999, to obtain financing. In the interim, Piroschak was required to pay $3,000 monthly as rent, with 10% of the rent being credited toward the purchase price.

[¶ 5] Piroschak operated the property as a bed and breakfast and struggled to make it financially successful. The contract did not indicate when rent was due, and about half of his rent payments were not paid by the first of each month; however, Whelan never threatened Piroschak with default or eviction. In April of 1999, after a Jackson, Wyoming, bank indicated it was not interested in providing financing, Piroschak's accountant sent Whelan a letter indicating Piroschak was unable to obtain financing. Under the terms of the contract Piroschak was to apply for financing with a lender and, if financing was unavailable, could provide Whelan with a lender declination letter and void the sale. Around the same time, Piroschak personally informed Whelan that he (Piroschak) would be unable to complete the purchase and requested that Whelan lower the purchase price. Whelan instead told Piroschak to vacate the premises. When Whelan reentered the property, the home was in disrepair. Whelan cleaned the place and made various repairs. In December of 1999, Whelan sold the bed and breakfast to another buyer for $325,000.

[¶ 6] This case began in federal district court, where Piroschak sued Whelan for fraud and deceit. After the federal suit was dismissed, Whelan brought suit in Teton County district court and sought an order to compel arbitration. Piroschak counterclaimed for fraud and deceit, basically claiming that Whelan had misrepresented the earning potential of the bed and breakfast. The motion to compel arbitration was denied, and Whelan eventually filed an amended complaint alleging breach of contract. After a bench trial, the district court denied Piroschak's fraud claim, a finding that is not challenged in this appeal. The court also found that Piroschak had breached the contract by repeatedly paying the rent late and by failing to pay rent in April and May of 1999. The court assessed damages against Piroschak at $143,500, consisting of (1) $122,500—the dif-

ference between the contract sale price and the amount for which Whelan later re-sold the property; (2) $6,000 for missed rent payments in April and May of 1999; (3) $10,000 for materials to make repairs; and (4) $5,000 for labor for repairs. The court also later assessed attorney's fees against Piroschak, making for a total judgment of $170,291.67. This appeal followed.

## DISCUSSION

### *Standard of Review*

[¶ 7] "When a trial court in a bench trial makes express findings of fact and conclusions of law, we review the factual determinations under a clearly erroneous standard and the legal conclusions de novo." *Hansuld v. Lariat Diesel Corp.*, 2003 WY 165, ¶ 13, 81 P.3d 215, ¶ 13 (Wyo.2003) (citing *Rennard v. Vollmar*, 977 P.2d 1277, 1279 (Wyo.1999)). When reviewing the factual findings of a district court following a bench trial, we apply the following standards:

> The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-weighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

*Harber v. Jensen*, 2004 WY 104, ¶ 7, 97 P.3d 57, ¶ 7 (Wyo.2004) (quoting *Life Care Centers of America, Inc. v. Dexter*, 2003 WY 38, ¶ 7, 65 P.3d 385, ¶ 7 (Wyo.2003)). Findings may not be set aside because we would have reached a different result. *Harber*, ¶ 7 (citing *Double Eagle Petroleum & Mining Corp. v. Questar Exploration & Production Co.*, 2003 WY 139, ¶ 6, 78 P.3d 679, ¶ 6 (Wyo. 2003)). Also, in reviewing a trial court's findings of fact,

we assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it. We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law.

*Harber*, ¶ 7 (quoting *Life Care Centers*, ¶ 7). We affirm the trial court's findings if there is any evidence to support them. *Id.*

### Breach of Contract

[¶ 8] In the first of two issues, Piroschak claims the district court erred in finding a breach of contract based on late payment of rent. Piroschak notes the contract did not provide a day of the month by which the rent payments were due. He asserts that, by accepting the late payments, Whelan waived any breach on that ground. Piroschak also argues that his failure to pay rent in April and May was not a breach of the contract because, by that time, he had informed Whelan that financing was unavailable and Whelan had evicted him. He also maintains that, under the circumstances, it would have been a useless gesture for him to provide a written proof of denial of financing. In response, Whelan asserts that waiver and excuse of performance are affirmative defenses, that Piroschak did not raise the defenses below, and that Piroschak should be precluded from raising the issues on appeal. Addressing the merits, Whelan asserts that, even though the contract did not include a due date for the rent, Piroschak admitted that the payments were due on the first of the month. Whelan also notes that he complained when the rent was late, thus reserving (and not waiving) his rights. As for Piroschak's contention that his performance under the contract was excused because he informed Whelan that financing was unavailable, Whelan notes that the contract required Piroschak to provide Whelan with a letter of declination from the lender. Whelan asserts that Piroschak never provided such a letter, much less filled out a loan application.

[¶ 9] Our review indicates that our well settled laws of contract interpretation settle all of the parties' contentions. We, therefore, begin by addressing the trial court's legal conclusion that "[t]he repeated late payments by Mr. Piroschak, as well as the failure to pay the April and May payments, amounts to a breach of the Contract to Buy and [Sell] Real Estate between the parties." In reviewing the trial court's findings, we apply the contract principles set forth in *Examination Management Services, Inc. v. Kirschbaum*, 927 P.2d 686, 689 (Wyo. 1996):

The initial question of whether the contract is capable of being understood in only one way is a question of law for the court. *Prudential Preferred Properties v. J and J Ventures, Inc.*, 859 P.2d 1267, 1271 (Wyo. 1993); *State v. Pennzoil Co.*, 752 P.2d 975, 979 (Wyo.1988). If the court determines that the contract is capable of being understood in only one way, then the language used in the contract expresses and controls the intent of the parties. *Pennzoil*, 752 P.2d at 978. In such case, the next question, what is that understanding or meaning, is also a question of law. *Treemont, Inc. v. Hawley*, 886 P.2d 589, 592 (Wyo. 1994); *Amoco Production Co. v. Stauffer Chemical Co. of Wyoming*, 612 P.2d 463, 465 (Wyo.1980).... As we have said, "[w]e are ... at liberty to make a determination as to the existence of ambiguity whether or not the parties here agree thereto one way or the other, and whether or not the trial court has reached a conclusion thereon one way or the other." *Amoco Production*, 612 P.2d at 465.

[¶ 10] The record shows that the parties used a contract form provided by the Wyoming Association of Realtors and, under Section IX, Paragraph C, the contract stated that possession was subject to a lease. Paragraph C stated:

Seller agrees to a lease for up to two (2) years from date of occupancy with $15,000.00 non-refundable deposit to be paid on date of possession and $3,000.00 per month lease payment (10% to be applied to purchase price principle) until date of closing. Said lease is for up to 24 months from date of occupancy.

No other lease contract was prepared and executed between the parties, and it is from these brief four lines that, in his amended complaint for breach of contract, Whelan alleged that the contract was breached by a default on the lease payments. His complaint also alleged that Piroschak had abandoned the property, failed to obtain a loan as called for by the contract, and damaged the property. No other specific facts were alleged in the complaint.

[¶ 11] From these allegations, testimony at trial was given regarding the parties' differing interpretations of the four line written lease agreement. Whelan believed that Piroschak had consistently paid rent late, and Piroschak agreed that the lease payments were due on the first but did not consider any payments made to be late because each payment was made within the first two weeks of the month and were paid each and every month. Additionally, because Piroschak did not pay in April or May, Whelan believed that Piroschak still owed those months; however, Piroschak disagrees. because, in April, Whelan had terminated the contract and evicted him. Because there is no written agreement concerning the lease other than Paragraph C, it appears that the parties' varying understandings arose from some other source not specified in the record. Additionally, Whelan's course of conduct in frequently accepting payments after the first of the month supports Piroschak's evidence that monthly payments made during the first half of each month complied with the agreement. Given this evidence, we shall enforce Section XV, Paragraph A of the purchase agreement which states that the parties have made no oral modifications, agreements, or representations that were intended to modify the written terms of the lease. Based on this written provision and the evidence that Piroschak made monthly payments in the proper amount, we conclude that the trial court erroneously found that Piroschak had breached the contract by making late payments.

[¶ 12] In its next finding to support breach, the trial court stated that Piroschak had never made the April or May payments. The record shows that in April of 1999 Whelan demanded that Piroschak vacate the premises. According to Paragraph C, the lease payment requirement was subject to possession, and Piroschak was entitled to possession until closing so long as he made monthly lease payments and tendered a loan application within 720 banking days after Whelan accepted the offer. Given that the record shows that Whelan terminated the contract and Piroschak vacated the premises in April, we cannot see the basis for finding that Piroschak missed paying April and May's payments, and we conclude that the trial court's findings in this regard are erroneous.

[¶ 13] The trial court made no other findings or conclusions regarding breach such as whether Piroschak breached the contract in other ways, i.e., by failing to secure financing or failing to make reasonable efforts to secure financing. We cannot make that determination ourselves as a matter of law because of the state of the evidence. The record does not indicate that the trial court decided that Piroschak truthfully stated that he conducted efforts to secure a loan which were rejected by a Jackson bank; that this application was made within 720 banking days after Whelan accepted the offer, and that the trial court determined whether this evidence satisfied the provision in Section V, Paragraph A, which required Piroschak to complete and tender a loan application to a lender. These findings and conclusions must be made at the trial court level, and we reverse the decision that the contract had been breached by late and missed payments and remand for new trial on the issue of breach of contract.

### Damages

[¶ 14] In his second issue, Piroschak challenges the damage award, and we review that issue despite the reversal and remand for new trial on the issue of contract breach because we conclude that the trial court has applied the wrong measure of damages for loss of bargain. We do not consider issues related to lack of evidence. Piroschak contends that the district court applied the wrong legal standard when it used the before-and-after fair market value ($122,500) of

the property to calculate damages. Citing *City of Kemmerer v. Wagner*, 866 P.2d 1283, 1287 (Wyo.1993), Piroschak asserts that, because the damage was not extensive, the measure of damages should be the reasonable amount of future repairs. He also claims the proof of damages was insufficient in three respects: first, Whelan did not prove the market value of the property at the time of resale; second, Piroschak claims Whelan sold the property at $325,000 because he did not want to hassle with it; and, finally, Piroschak argues that there was insufficient evidence to support the $10,000 for repairs and the $5,000 for labor. In response, Whelan asserts that Piroschak has cited an incorrect tort standard for damages. Whelan asserts that the before and after fair market value is the proper measure of damages and correctly compensates Whelan for his loss of the bargain. Whelan believes the damages are supported by the evidence in all respects.

[¶ 15] "Damages for a breach of contract for sale of real property are not difficult of accurate estimation. They are measured by the difference between the contract price and the value of the property at the time of the breach of contract. Such damages represent the loss of the bargain." *Walker v. Graham*, 706 P.2d 278, 281 (Wyo. 1985) (citing *Reed v. Wadsworth*, 553 P.2d 1024, 1035 (Wyo.1976)). Although a subsequent sale of the same property may be evidence of market value, it is not conclusive, but rather the price received is only evidence of value and not the measure of damage. *Reed*, at 1035. In this case, the trial court determined that the loss of bargain damages was the difference between the contract price and the subsequent sale price. That method

is not the correct measure of damages. The resale price of the land is not necessarily the market value of that land. *Id.* at 1036. Instead, "the trial court should consider **all** relevant evidence of market value, including other sales of the same or similar property, which were transacted reasonably close in time and distance and under comparable market conditions." *Id.* (emphasis added). For example, in *Reed*, the district court relied on an expert appraisal, which was based on the sales of comparable land, and we found this reliance to be proper. After a new trial, should the issue of damages again arise concerning the loss of bargain, the trial court should require evidence to support all damage claims in accordance with this standard.

## CONCLUSION

[¶ 16] Piroschak did not appeal the trial court's judgment regarding his counterclaims. The trial court's judgment that Piroschak breached the contract because of late and missing payments is reversed, and the issue of breach of contract is remanded for new trial. The award of damages is also reversed. We note that the trial court applied an incorrect rule of law when computing damages for loss of bargain and should the issue again arise, damages should be measured in accordance with our decisions in *Walker* and *Reed*.