2008 WY 20

**Byron BAKER, Appellant (Defendant/Counter Plaintiff),**

v.

**Donald W. SPEAKS, Kathleen B. Speaks, David Speaks, and Elizabeth Speaks, Appellees (Plaintiffs/Counter Defendants).**

No. S–07–0170.

Supreme Court of Wyoming.

Feb. 22, 2008.

Representing Appellant: Byron Baker, pro se.

Representing Appellees: Paula Ann Fleck and John Gallinger, of Holland & Hart, LLP, Jackson, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1]   Four members of the Speaks family brought suit against the Appellant, Byron Baker, for breach of a construction contract. After a bench trial, the district court granted judgment in favor of Appellees.  Mr. Baker challenges that judgment.  We affirm.

### ISSUES

[¶ 2]   Mr. Baker raises the following issue:

Did the Appellees breach the contract and breach the implied covenant of good faith and fair dealing requirement by wrongfully expelling the builder, [Mr. Baker], from the project?

Appellees present the issues as follows:

1.  Did the District Court err when it found that Byron Baker had breached his contract with the [Appellees]?

2. Did the District Court err when it found that Byron Baker had presented insufficient evidence to support his counterclaims against the [Appellees]?

## FACTS

[¶ 3] In July 1999, David and Elizabeth Speaks opened negotiations to employ Mr. Baker to construct a home.[1] The negotiations concluded on September 14, 1999, when Mr. Baker and Appellees entered into a contract. Pursuant to the contract, Mr. Baker agreed to build a 36' by 36' log home for the total amount of $133,488.00. The negotiations involved a number of floor plans that the parties exchanged, but Mr. Baker was to be solely responsible for turning the final floor plan drawing into a structurally sound home.

[¶ 4] The contract was memorialized in a three-page document with two features that are particularly relevant to our review. First, the home was to be "[c]ompleted in a substantial workmanlike manner." Second, the contract provided no particular time for completion of the home. The same day that the parties entered into the contract, Appellees paid Mr. Baker the first installment of $2,669.76, which was listed in the contract as a "commencement" payment.

[¶ 5] By the spring of 2000, Appellees were growing increasingly concerned about both the pace of construction and its apparent poor quality. Appellees met with Mr. Baker numerous times during the summer of 2000 regarding the delays. There was a final meeting on or about August 1st at which David and Elizabeth Speaks presented Mr. Baker with a written list of incomplete items and asked Mr. Baker to commit to a completion date. The parties agreed to a schedule providing that the interior of the home would be completed by the end of August, and that the exterior would be completed by September 10th. During that meeting, Mr. Baker's comments raised concerns regarding the status of payment to the subcontractors. Appellees asked Mr. Baker to provide lien waivers from the subcontractors.

[¶ 6] By the first week of September, Mr. Baker had not completed any items on the August 1st list. Neither had he provided the requested lien waivers from the subcontractors. At that time, Appellees had paid Mr. Baker a total of $140,202.61. On September 5th, Appellees, acting through their attorney, sent Mr. Baker a letter instructing him to vacate the job site until he provided the requested lien waivers. Mr. Baker left the job site after receiving the letter on September 7th.

[¶ 7] Now left with an incomplete home, Appellees hired a plumber to evaluate the remaining plumbing work. The plumber recommended hiring a general contractor to perform a general inspection, and Appellees did so. The contractor noticed several problems in the home, including sheetrock that was crushed at the top and under-sized rafters and roof purlins. The contractor recommended that Appellees contact a structural engineer to perform an in-depth analysis of the construction. The structural engineer found that the roof was "substantially understructured or undersized to safely support the potential snow loads." Appellees responded to the inspections by hiring others to repair and complete the home at significant additional cost.[2]

[¶ 8] Appellees filed suit, alleging breach of contract, breach of the covenant of good faith and fair dealing, breach of implied warranty, and promissory estoppel. Mr. Baker filed a counterclaim for breach of contract.[3]

1. Four members of the Speaks family were the Plaintiffs, now Appellees, in this case: David, his wife Elizabeth, and David's parents. Primarily, David dealt with Mr. Baker, though Elizabeth also had some involvement. David's parents owned the land on which the home was constructed, and David served as their agent. David's parents had no personal involvement with the events leading up to the litigation.

2. The record reflects that, sometime during the period that these inspections were occurring, Mr. Baker provided lien waivers to Appellees. The lien waivers, however, indicated that he still owed subcontractors more than $4,000. Mr. Baker did not return to the job site.

3. Mr. Baker's wife, Rose Baker, was named as a defendant in Appellees' original suit. Ms. Baker counterclaimed for libel. The district court eventually dismissed Ms. Baker from the suit. Neither Ms. Baker nor Appellees timely appealed that ruling. As a result, no claims involving Ms. Baker are at issue in the current appeal.

A three-day bench trial was held. On June 7, 2007, the district court entered its *Findings of Fact, Conclusions of Law and Judgment.* After detailing the course of events leading to the trial, the district court found that "Defendant Byron Baker breached [the] contract by failing to complete the project in a timely manner and failing to perform work in a safe and workmanlike manner and in accordance with industry standards." As a result of these breaches, the court awarded Appellees $239,359.37 in compensatory damages.

## STANDARD OF REVIEW

[¶ 9] When a district court issues specific findings of fact and conclusions of law, we review its findings of fact for clear error and its conclusions of law *de novo. E.g., Piroschak v. Whelan,* 2005 WY 26, ¶ 7, 106 P.3d 887, 890 (Wyo.2005). We do not set aside findings of fact simply because we would have reached a different result, nor do we re-weigh the evidence on appeal. Instead, we presume that the district court's findings of fact are correct. We also assume that the evidence of the party prevailing below is true and give that party every inference that can be fairly drawn from the evidence. A finding of fact is clearly erroneous only where, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.*

## DISCUSSION

[¶ 10] Much of Mr. Baker's brief is focused on his proposition that "the trial court's findings were one-sided, even though both parties had submitted Findings of Fact and Conclusions of Law." He claims that his workmanship was acceptable and that the construction time was reasonable. He also claims that Appellees breached the construction contract when they instructed him to leave the job site.

[¶ 11] We first address the district court's finding that Mr. Baker failed to complete the home in a timely manner. As we have previously stated, "[w]here ... no time for performance is specified in a contract, the law implies performance must be within a reasonable time, and what is a reasonable time depends upon the circumstances of each case." *G.C.I., Inc. v. Haught,* 7 P.3d 906, 909 (Wyo.2000). On appeal, Mr. Baker contends that the evidence is insufficient to establish that he failed to perform in a timely manner. We disagree.

[¶ 12] Mr. Baker does not dispute that the parties intended the roof to be completed prior to significant snowfall in the fall of 1999. He also does not dispute that the roof was not completed until March 2000. David Speaks testified that he raised his concerns regarding the lack of progress with Mr. Baker during the August 1, 2000 meeting. Mr. Baker agreed to a specific schedule for the remaining construction. The evidence shows that Mr. Baker signed the scheduling document, and that the schedule specified "Date[s] of Completion" for each task. For example, it listed that "Logs" were to be completed by "8/9," "Doors" were to be completed by "8/15–8/17," the "Interior Flooring" was to be completed by "8/13," and the remaining "Electric & Plumbing Fixtures" were to be installed by "8/23." David Speaks testified that Mr. Baker did not complete any of the items on the list. The district court's conclusion that Mr. Baker did not timely fulfill his contractual obligations was supported by substantial evidence and was not clearly erroneous.

[¶ 13] Mr. Baker also claims on appeal that he constructed the home in a workmanlike manner. There is strong support in the record for the district court's finding that Mr. Baker's workmanship failed to meet industry standards. Four expert witnesses testified for Appellees: a general contractor, a structural engineer, a heating system installer, and a sheetrock installer. Each of them unequivocally testified that Mr. Baker's work was not performed skillfully or according to industry standards. Each expert described in detail precisely why and how they replaced or repaired defects in Mr. Baker's construction. The engineer testified that a home built in that particular location should be designed and built to withstand a snow load of 90 pounds per square foot. As constructed by Mr. Baker, the roof could support little more than its own weight. The roof repair alone involved construction of a

second roof structure over the exterior surface of the existing roof and installation of a new support beam from the roof to the basement floor. Other necessary repairs included taking out material around the windows to provide allowance for log settling, structural work to ensure that any settling occurred evenly, replacing a substantial part of the heating system, and replacing 80–85% of the existing sheetrock. This is not an exhaustive list of necessary repairs reflected in the trial record. We perceive no clear error in the district court's finding that Mr. Baker's workmanship was inadequate.

[¶ 14] Mr. Baker also asserts that Appellees "could not show a clear failure of performance ... at the time [Mr. Baker] was expelled from the project." In essence, Mr. Baker claims that Appellees' request that he leave the job site constituted breach of the construction contract, and that the district court erred in failing to rule in his favor on his counterclaim. He points this Court to a prior case in which we endorsed a district court's statement that "the party first committing a substantial breach of contract cannot complain that the other party ... fails to perform." *Williams v. Collins Comms., Inc.,* 720 P.2d 880, 891 (Wyo.1986).

[¶ 15] Mr. Baker's line of reasoning overlooks the fact that he had already breached the contract by the time Appellees instructed him to cease construction. He did so in two ways: failure to complete construction in a timely manner and poor workmanship. Both of these breaches occurred prior to September 5th, when Appellees' counsel instructed Mr. Baker to vacate the job site. As we have discussed *supra,* ¶¶ 11–13, the district court's findings of untimely performance and poor workmanship are both supported by the trial record. Mr. Baker has failed to demonstrate reversible error on appeal.[4]

[¶ 16] Affirmed.

---

**4.** As a final procedural matter, we note that Appellees filed in this Court a *Motion to Strike Portion of Appellant's Designation of Record.* The motion alleges that Mr. Baker improperly designated exhibits that were not admitted at trial. The exhibits identified in the challenged designation are not part of the transmitted record. We therefore deny Appellees' motion as moot.