2010 WY 91

**Orlan O. GARWOOD and Carol A. Jones as Trustees of the W.J. Garwood and Mildred E. Garwood Family Trust, Appellants (Defendants),**

v.

**William J. GARWOOD, Appellee (Plaintiff).**

No. S–09–0092.

Supreme Court of Wyoming.

June 29, 2010.

Representing Appellants: Scott W. Meier and Lucas E. Buckley, Hathaway & Kunz, P.C., Cheyenne, Wyoming.

Representing Appellee: No appearance.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.

GOLDEN, Justice.

[¶1]   On May 2, 2006, Appellee, William J. Garwood (Mr. Garwood), filed a lawsuit seeking an order directing the Appellants (Trustees), who are two of Appellee's three children and two of the three designated Trustees of the W.J. Garwood and Mildred E. Garwood Trust (Family Trust), to pay to him a sum of money from the Family Trust sufficient to provide for his support, as provided by the terms of the Trust.   The district court issued an order allocating trust assets and directing payments to Mr. Garwood, the Trustees appealed, and on October 22, 2008, this Court issued its decision affirming that district court order.   *See Garwood v. Garwood,* 2008 WY 129, 194 P.3d 319 (Wyo. 2008) (*Garwood I* ).

[¶2]   This matter is again before this Court, this time on the Trustees' appeal from a subsequent order of the district court directing the Trustees to reimburse the Family Trust for amounts the Trustees withdrew from the trust for payment of their attorneys' fees and costs.   We affirm.

## ISSUES

[¶3]   The Trustees present the following issues on appeal:

1.   Is it contrary to the Wyoming Rules of Civil Procedure and Wyoming law for the District Court to issue a *Supplemental Order* purporting to expand the judgment in the underlying matter nearly two years after the District Court entered its judgment and more than five months after this Court affirmed the District Court's judgment?

2. Did the District Court's *Supplemental Order* erroneously award a judgment against individuals that were not parties to Appellee's underlying *Complaint?*

3. Did the District Court's *Supplemental Order* violate the rights of Orlan O. Garwood and Carol A. Jones individually by levying a judgment against them without notice of the claim or a meaningful opportunity to be heard opposing such claim?

4. Is the District Court's *Supplemental Order* contrary to Wyoming's Uniform Trust Code?

## FACTS

[¶ 4] The facts underlying the original dispute between these parties over the Family Trust assets and Mr. Garwood's entitlement to subsistence payments from that trust are set forth in our opinion in *Garwood I*, 2008 WY 129, 194 P.3d 319, and we will not restate that detailed recitation of facts here, except as necessary to frame the current issues.

[¶ 5] Mr. Garwood and his wife, Mildred Garwood, were married in 1951. The Appellant Trustees in this matter, Orlan O. Garwood and Carol A. Jones, are the natural children of Mrs. Garwood from a prior marriage. Mr. Garwood adopted them shortly after he married Mrs. Garwood in 1951. A third child, Judy K. Kechter, was born of Mr. Garwood's marriage to Mrs. Garwood. Judy Kechter is named in the district court proceedings as a party to this litigation in alignment with her father, but she has had limited involvement in the proceedings and is not represented by counsel.

[¶ 6] In 1992, Mr. and Mrs. Garwood purchased a Revocable Living Trust "kit" from a door-to-door salesman representing Somerset Group of Salt Lake City, Utah. The district court found, and we agreed in our *Garwood I* decision, that the trust was of no earthly use to the Garwoods. *Garwood I*, ¶ 5, 194 P.3d at 321. As we noted, at its peak, the Garwoods' estate was valued at about $400,000, and at that time, adverse estate tax consequences did not arise until the estate was over $1,200,000 (if both were

living) and $600,000 (if only one of the two were living). Nonetheless, on April 21, 1992, Mr. and Mrs. Garwood executed the trust documents and transferred some of their assets, including their home in Wheatland, into a trust.

[¶ 7] After executing the trust documents, Mr. and Mrs. Garwood ignored the terms and requirements of the trust and largely used their assets as though the trust did not exist. In 2005, Mrs. Garwood passed away, and that event caused the trust to divide into two separate trusts: the Marital Trust and the Family Trust. Mr. Garwood was the trustee of the Marital Trust, and the Garwoods' three children were the trustees of the Family Trust. Even after Mrs. Garwood's death and the division of the trust, all of the parties to this litigation continued to ignore the Trusts.

[¶ 8] The disregard of the Trusts and neglect by all Trustees to follow the terms of the Trusts continued until a dispute arose in 2006. In 2006, Mr. Garwood needed money to live on because the Marital Trust's cash assets had been expended and his income was not sufficient to cover his on-going expenses. Mr. Garwood, who had in 2006 moved from Wheatland to Cheyenne, therefore desired to sell his Wheatland home. Title to the Wheatland home was, however, in the Family Trust, and a majority of the Trustees of the Family Trust would not approve the home's sale. Specifically, Orlan Garwood and Carol Jones objected to the sale of the Wheatland home, while Judy Kechter did not object to the home's sale.

[¶ 9] Because the Trustees refused to approve the sale of Mr. Garwood's Wheatland home, Mr. Garwood filed a complaint in district court. Through that action, Mr. Garwood sought an order directing the Trustees of the Family Trust to liquidate the Wheatland home and pay Mr. Garwood subsistence payments from the proceeds. The Trustees, Orlan Garwood and Carol Jones, filed an answer and counterclaim seeking an order directing Mr. Garwood to repay to the Trusts sums of money that they contended he had expended in violation of the terms of the Trusts.

[¶ 10] On June 11, 2007, the district court issued a decision letter that, although it ordered Mr. Garwood to repay roughly $21,000 to the Family Trust, generally ruled in Mr. Garwood's favor and directed the Trustees to liquidate the Wheatland home and ensure that Mr. Garwood's monthly income from the Trusts and any other sources totaled at least $3,200 per month. On July 2, 2007, the district court entered its judgment in *Garwood I,* and on July 30, 2007, the Trustees filed their notice of appeal. We issued our decision affirming the district court's judgment on October 22, 2008.

[¶ 11] After the district court entered its judgment in *Garwood I,* and while the Trustees' appeal was pending, motions and applications continued to be filed with the district court. The first was Mr. Garwood's application for attorneys' fees and costs in the amount of $20,559.85, which was filed on July 3, 2007, the day after the district court entered its judgment in *Garwood I.* Mr. Garwood's application was made pursuant to Wyo. Stat. Ann. § 4–10–1004, the Uniform Trust Code provision governing attorneys' fees and costs, and included an itemized statement of the services and fees of Mr. Garwood's attorney. On July 13, 2007, the Trustees filed their response objecting to Mr. Garwood's application for fees and costs. The Trustees argued that attorneys' fees and expenses are not automatically paid under the Uniform Trust Code and that Mr. Garwood had failed to show that justice and equity required payment of his fees from the Trust or that the fees applied for were reasonable and customary.

[¶ 12] On August 2, 2007, Mr. Garwood filed another application with the district court, this one seeking an order directing the Trustees to make payments to Mr. Garwood totaling $58,300 to allow him to purchase a wheel chair, hearing aids and a wheel chair accessible van. On August 24, 2007, the Trustees responded and requested that the district court deny Mr. Garwood's application. The Trustees pointed out that payment of the current application, together with pay-

ment of Mr. Garwood's attorneys' fees, would use all of the trust funds, which they argued was contrary to the stated purpose of the Trust. The Trustees further argued that the application should be denied because Mr. Garwood had "failed to set priorities which expenditures he deems more important to him. In a situation where limited resources exist, setting priorities what is important and what is unimportant is imperative." The Trustees also argued that the payment should be rejected because "payment to Plaintiff of the remaining trust assets before final resolution of this matter will negate the appeal of this matter and irreparably prejudice Defendants in this matter."

[¶ 13] On October 23, 2007, Mr. Garwood filed an application with the district court for payment of attorneys' fees to respond to the Trustees' Supreme Court appeal. The application requested between $5,000 and $7,000 in anticipated attorneys' fees for the appeal.

[¶ 14] On November 6, 2007, the district court issued an Order on Applications for Disbursement of Funds. The district court granted Mr. Garwood's July 3, 2007, application for attorneys' fees and costs and ordered the Trustees to issue payment to Mr. Garwood of attorneys' fees in the amount of $23,200 and costs in the amount of $1,020.35, for a total payment of $24,220.35. The district court denied the other application for payment of expenses from the Family Trust.[1]

[¶ 15] On November 15, 2007, the Trustees filed a motion to stay the district court's order awarding attorneys' fees and costs to Mr. Garwood. In that motion, the Trustees informed the district court that only $17,666 remained in the Family Trust, and that payment of the ordered attorneys' fees and costs would consume the fund. The Trustees did not disclose amounts expended but did inform the district court for the first time that the Trustees had expended funds from the Family Trust to pay costs of their litigation and appeal and for anticipated accounting and tax costs. The Trustees further argued

---

1. The court identified the denied application as bearing the date July 3, 2007, and because that was the date of the application for attorney's fees and costs that the court did grant, that appears to be a typographical error. It is thus unclear from the district court's order which application the court was referencing when it denied payment of an application.

that should Mr. Garwood require funds for litigation costs, he should be required to use funds from the Marital Trust, not the Family Trust. They stated:

The nature of the underlying matter was such that Plaintiff elected to bring suit in this matter, not the Trustees. The use of the Marital Trust funds for the cost of the underlying suit is certainly within the realm of discretionary uses left the Plaintiff by the language of the Marital Trust. The provision of Family Trust funds for such payments, when such funds are stated by the trust agreement to be for the support of the Plaintiff is not in keeping with the tenor of the trust agreement.

[¶ 16] Subsequent submissions by the parties showed that at some point after the district court entered its judgment on July 2, 2007, and after the subsequent sale of the Wheatland home, the Trustees transferred $29,320.85 from the Family Trust to pay attorneys' fees and costs and another $20,000 from the Family Trust to the law firm of Hickey & Evans, LLP, as a retainer for costs and fees associated with the Trustees' Supreme Court appeal and for anticipated accounting and tax costs.

[¶ 17] The record is unclear as to the sequence of hearings that followed the Trustees' motion for a stay. At some point during an unrecorded telephone hearing with the district court, Mr. Garwood withdrew his request to have his attorneys' fees and costs paid from the Family Trust, and Mr. Garwood's requested fees and costs were never paid from the Family Trust.

[¶ 18] On January 2, 2008, Mr. Garwood filed a motion seeking recovery of the funds the Trustees had withdrawn from the Family Trust for attorneys' fees and costs. Mr. Garwood's motion also requested removal of Orlan Garwood and Carol Jones as Trustees, alleging they had breached their trust and fiduciary duties. The Trustees filed an opposition to that motion, and on April 29, 2008, the district court issued an order stating, "The court shall withhold any ruling on pending matters until such time as the Wyoming Supreme Court renders an opinion in the appeal currently pending."

[¶ 19] On January 5, 2009, following this Court's decision in *Garwood I*, the district court held a hearing on the pending motions. During that hearing, Mr. Garwood made no request for payment of his own attorneys' fees and costs and instead argued his request that the Trustees be removed and be required to reimburse the Family Trust for amounts the Trustees used to pay their own attorneys' fees and costs. Mr. Garwood argued the Trustees' payment of attorneys' fees and costs without an order of the court approving such payment was improper. The Trustees maintained the payment of attorneys' fees and costs was within their authority to pay expenses of the Family Trust, and they were under no obligation to seek a court order allowing those payments:

My client shouldn't have to justify to Mr. Garwood or to anybody else, other than through an accounting, but they don't petition the courts to make sure they can pay the ordinary business expenses, whether it's accounting fees or attorney's fees. Those things are not done on behalf of their own benefit. They have trust administration expenses, and I think somewhere counsel has gotten off on the wrong side of thinking, Jeez, with a trust, every time you have some kind of trust expense it has to be approved by the court.

[¶ 20] On April 7, 2009, the district court issued its order on the issue of the Trustees' use of Family Trust funds for their attorneys' fees and costs. The court ordered the Trustees to reimburse the Family Trust all but $10,000 of the fees and costs the Trustees had expended from the Trust. In support of its order, the district court made the following findings:

a. The principal interest of Orlan O. Garwood and Carol A. Jones was in protecting their own potential inheritance. They, Orlan O. Garwood and Carol Jones, obviously accepted, as did Ms. Kechter, large gifts that probably should have been part of the trust.

b. The Court's sense always was that the trustees did not really do their job in this matter, and this whole thing came to a head when Mr. Orlan O. Garwood and Ms. Carol A. Jones would not agree to sell the

house where Plaintiff resided. As a result, the trustees ended up spending a huge amount of money in attorney's fees.

c. Plaintiff sued and brought this matter to a head. Defendants Orlan O. Garwood and Carol A. Jones defended Plaintiff's action.

d. Because there was a suit, the trustees named in their official capacities had some right to defend themselves and use trust assets to do that.

e. Such a defense, however, had to be done and accomplished with the idea that the main goal here of the trust needed to be kept in mind, which is—the overriding goal was that Mr. William Garwood, for the duration of his life, would have money available to him.

f. Therefore, the expenditure of this huge amount in attorney's fees by the trustees, Orlan O. Garwood and Carol A. Jones, while it began as a defense of themselves, ultimately ended up as a fight to protect their own inheritance.

g. The trustees Orlan O. Garwood and Carol A. Jones paid the sum of $49,320.85 as attorney fees and costs from the assets of the trust to counsel for representation in these proceedings, including representation in the appeal to the Wyoming Supreme Court of the earlier judgment of this court.

h. Using the Court's discretion here, it was appropriate for the Trustees to spend up to $10,000.00, and after that, the whole purpose of the trust became undermined by what should have been done, which would have been to assure that the great majority of this money go to Mr. William Garwood.

i. The remaining $39,320.85 were fees incurred by the trustees for representation of their personal interests, were fashioned to undermine the purpose of the trust and are not fees to be cha[r]geable to the trust.

[¶ 21] On April 23, 2009, the Trustees filed their Notice of Appeal. The Trustees filed their brief on July 29, 2009, and no brief was filed on behalf of Mr. Garwood by the filing deadline of September 16, 2009. On December 4, 2009, counsel for Mr. Garwood filed notice that Mr. Garwood died on September 6, 2009. No personal representative has entered an appearance on behalf of Mr. Garwood, and no brief has been filed on behalf of Mr. Garwood.

## DISCUSSION

### *Standard of Review*

[¶ 22] The Trustees' appeal presents arguments that the district court acted contrary to law and abused its discretion. This Court reviews conclusions of law *de novo*. *Piroschak v. Whelan,* 2005 WY 26, ¶ 7, 106 P.3d 887, 890 (Wyo.2005). We have defined our abuse of discretion inquiry as follows:

> The core of our inquiry must reach the question of the reasonableness of the choice made by the trial court. Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *FML v. TW,* 2007 WY 73, ¶ 8, 157 P.3d 455, 459 (Wyo.2007).

*Garwood I,* ¶ 17, 194 P.3d at 325.

### *Jurisdiction*

[¶ 23] The Trustees contend first that the district court was without jurisdiction to enter its order directing the Trustees to reimburse the Family Trust. Specifically, the Trustees argue that once they filed their notice of appeal in *Garwood I,* the district court was without jurisdiction to rule on Mr. Garwood's motion for removal of Trustees and recovery of attorneys' fees expenditures by the Trustees. We disagree.

[¶ 24] District courts are entitled to a presumption of regularity when exercising their general jurisdiction. *KC v. KM,* 941 P.2d 46, 50 (Wyo.1997); *First Wyoming Bank, N.A.–Cheyenne v. First Nat'l Bank & Trust Co.,* 628 P.2d 1355, 1362 (Wyo.1981). The question of attorneys' fees and costs in a given civil action is a common issue that a trial court may address, and it does not, as suggested by the Trustees, require the filing of a separate action or a motion to amend a judgment. *See* Wyo. Stat. Ann. § 1–14–126

(LexisNexis 2009) (discretion of court in awarding costs and attorneys' fees); W.R.C.P. 54(d) (procedures for post-judgment cost and fee applications). The issue may be addressed as an element of damages, or it may be addressed, as it was in this case, through the filing of a post-judgment motion, as described in Rule 54. *See* W.R.C.P. 54.

[¶ 25] The issue of attorneys' fees and costs was properly placed before the district court by Mr. Garwood's timely filing of a post-judgment application for fees and costs, and the court thus had authority to address the issue in the action before it. The question remains, then, whether the district court lost its jurisdiction to address the issue once the Trustees filed their notice of appeal from its original judgment. We conclude that it did not.

[¶ 26] Rule 6.01 of the Wyoming Rules of Appellate Procedure governs jurisdiction after an appeal is docketed. It provides:

> The appellate court shall acquire jurisdiction over the matters appealed when the case is docketed. In all cases, the trial court retains jurisdiction over all matters and proceedings not the subject of the appeal, including all matters covered by Rules 4 and 5, unless otherwise ordered by the appellate court.

W.R.A.P. 6.01(b). Consistent with Rule 6.01, we have held that during the pendency of an appeal, the district court has the right and power to enforce its decrees and orders and to protect the parties as to any rights they acquired in the district court proceedings. *KC*, 941 P.2d at 50–51; *Moore v. Moore*, 809 P.2d 255, 258 (Wyo.1991); *Coones v. F.D.I.C.*, 848 P.2d 783, 796 n. 18 (Wyo.1993).

[¶ 27] The district court's judgment did not address attorneys' fees and costs. Because those issues were not the subject of the Trustees' appeal, the district court did not lose jurisdiction to address them.

[¶ 28] Additionally, we find no inordinate delay in the district court's handling of the attorneys' fees and costs issue. Mr. Garwood filed his application for fees and costs the day after the district court entered its judgment, well within the fourteen days permitted by W.R.C.P. 54. It was only through addressing Mr. Garwood's fee and cost application that the district court learned that the Trustees had, without application to the court for an award of fees and costs, withdrawn funds from the Family Trust to pay their own fees and costs. The Trustees' attempt to bypass the fee application process did not deprive the trial court of its authority to address the Trustees' entitlement to fees and costs.

[¶ 29] Nor do we accept the Trustees' suggestion that the district court's delay in deciding the issue until after this Court's decision in *Garwood I* is indicia that the district court was acting outside its authority. As we will discuss below, the Uniform Trust Code requires that an award of fees and costs from a trust fund be premised on a finding that the action benefitted the trust. The district court thus acted prudently in delaying its consideration of the issue until this Court had ruled on the *Garwood I* appeal.

[¶ 30] The district court had jurisdiction to address the attorneys' fees and costs issues presented to it, and it acted reasonably in delaying its decision on the issues until this Court had decided the appeal from the district court's original decision.

***Abuse of Discretion***

[¶ 31] The Trustees contend that even if the district court had jurisdiction to enter its order on the Trustees' fees and costs, the court abused its discretion in allowing the Trustees only $10,000 in fees and costs. We find no abuse of discretion.

[¶ 32] Generally, Wyoming subscribes to the American rule regarding recovery of attorneys' fees, making each party responsible for its own attorneys' fees, unless an award of fees is permitted by contract or statute. *Morrison v. Clay*, 2006 WY 161, ¶ 16, 149 P.3d 696, 701–02 (Wyo.2006); *Schlesinger v. Woodcock*, 2001 WY 120, ¶ 21, 35 P.3d 1232, 1239 (Wyo.2001). Wyoming has adopted the Uniform Trust Code (UTC), which authorizes an award of fees and costs as follows:

In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust that is the subject of the controversy.

Wyo. Stat. Ann. § 4–10–1004 (LexisNexis 2009).

[¶ 33] The Trustees take issue with the applicability of this provision to the question of a trustee's fees and costs, contending that a trustee involved in a legal proceeding over a trust may simply pay the costs of litigation as an ordinary expenditure in the course of administering the trust. In support of this argument, the Trustees cite to our holding in another case wherein we observed that it would be "inconsistent to recognize a trustee has standing in its official capacity to defend a trust, but to then make the trustee personally bear the expense of defending the trust." *See American Nat'l Bank of Cheyenne v. Miller*, 899 P.2d 1337, 1341 (Wyo.1995). The Trustees also rely on the UTC provisions requiring a trustee to defend and prosecute claims on behalf of the trust, and authorizing a trustee to pay expenses incurred in the administration of the trust.

[¶ 34] We do not take issue with the premise that a trustee should not be personally responsible for litigation expenses associated with the proper exercise of its official duties. We also, however, do not believe that the only way to honor a trustee's ability to defend or prosecute appropriate legal actions is to allow the trustee unfettered discretion over payment of litigation expenses. It is for the trial court to determine whether fees and costs were properly incurred in a trustee's official capacity and, if so, what constitutes a reasonable amount for those fees and costs.

[¶ 35] This interpretation of the UTC attorneys' fees provision is consistent with our rules of statutory construction and the interpretations other courts have given that same provision. We interpret statutes using the following guidelines:

When interpreting statutes, we follow an established set of guidelines. First, we determine if the statute is ambiguous or unambiguous. A statute is unambiguous if its wording is such that reasonable persons are able to agree as to its meaning with consistency and predictability. Unless another meaning is clearly intended, words and phrases shall be taken in their ordinary and usual sense. Conversely, a statute is ambiguous only if it is found to be vague or uncertain and subject to varying interpretations. If a statute is clear and unambiguous, we give effect to the plain language of the statute. To determine whether a statute is ambiguous, we are not limited to the words found in that single statutory provision, but may consider all parts of the statutes on the same subject.

*Exxon Mobil Corp. v. Wyo. Dep't of Revenue*, 2009 WY 139, ¶ 11, 219 P.3d 128, 134 (Wyo. 2009) (internal citations omitted). We have also held that a specific statutory provision controls over a general provision on the same subject. *Cotton v. McCulloh*, 2005 WY 159, ¶ 14, 125 P.3d 252, 258 (Wyo.2005).

[¶ 36] There can be no reasonable dispute that the litigation at issue was a judicial proceeding involving the administration of a trust. The issues of asset allocation and required payments under a trust's terms are clear issues of trust administration. Additionally, the UTC provision governing an award of fees and costs is more specific to the question of litigation expenses and therefore controls over the general UTC provisions authorizing a trustee to defend claims and pay expenses related to trust administration. *See* Wyo. Stat. Ann. § 4–10–1004 and § 4–10–816 (LexisNexis 2009); *see also Klinkerfuss v. Cronin*, 289 S.W.3d 607, 617–18 (Mo.App.2009) (Missouri UTC provision identical to Wyoming's § 1004 provides basis for award of fees and costs to trustee); *Calvert v. Estate of Calvert*, 99 Ark. App. 286, 259 S.W.3d 456, 459–60 (2007) (action challenging conveyance of real property to beneficiary trustee was a judicial proceeding involving trust administration and provision allowing court to award fees and costs governed payment of litigation expenses); *Atwood v. Atwood*, 25 P.3d 936, 946–47 (Okla. Civ.App.2001) (Oklahoma UTC provision identical to Wyoming's § 1004 governs litiga-

tion expenses, not more general provision that allows trustee to hire attorneys to assist with trust administration); *Nickas v. Capadalis,* 954 S.W.2d 735, 741 (Tenn.App.1997) ("[u]nless some benefit is contributed to the preservation of the trust estate, however, an award of attorney's fees is not permitted from the trust fund, notwithstanding the rule that a trust estate should bear the expense of the administration of the trust").

[¶ 37] Wyo. Stat. Ann. § 4–10–1004 thus governs the Trustees' entitlement to Family Trust funds to cover their litigation expenses, and it was for the district court to determine, based on a fees application from the Trustees, the amount of fees and costs, if any, the Trustees should be awarded. Our next determination then is whether the district court abused its discretion in ruling on the fees and costs the Trustees should have been awarded from the Family Trust.

[¶ 38] Once it has been determined that authority exists to award fees and costs, a trial court has extremely broad discretion to rule on the amount of such an award. *KC,* 941 P.2d at 53; *Haltom v. Haltom,* 755 P.2d 876, 879–80 (Wyo.1988). In reviewing the district court's determination of the amount, if any, to award the Trustees in this case, we are mindful that we have held that we will not interfere with the trial court's exercise of discretion in making such an award except upon proof that such discretion was gravely abused. *See KC,* 941 P.2d at 53; *Haltom,* 755 P.2d at 879–80.

[¶ 39] Courts interpreting provisions identical or similar to § 4–10–1004 have observed that the provision's use of the phrase "justice and equity" must guide a trial court's discretion in determining whether to award fees from a trust and the amount of any fees awarded. *See, e.g., Atwood,* 25 P.3d at 947. The Oklahoma court in *Atwood* described the inquiry as follows:

> The highly subjective phrase "justice and equity" does not state specific guidelines or criteria for use by a trial court or for use by a reviewing court. The phrase connotes fairness and invites flexibility in order to arrive at what is fair on a case by case basis. Hence, general criteria drawn from other types of cases provide nonex-

clusive guides. These include (a) reasonableness of the parties' claims, contentions, or defenses; (b) unnecessarily prolonging litigation; (c) relative ability to bear the financial burden; (d) result obtained by the litigation and prevailing party concepts; and (e) whether a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons in the bringing or conduct of the litigation.

> The role of "justice and equity" in this phase of the inquiry before the trial court is distinct from their role in determining what amount of costs, fees, and expenses should be allowed. For example, the fact that the nature of the case was difficult and required a great deal of effort goes to the amount of the award rather than whether an award should be granted.

*Atwood,* 25 P.3d at 947; *see also Whittlesey v. Aiello,* 104 Cal.App.4th 1221, 128 Cal. Rptr.2d 742, 748 (2002) (no basis for trustee to recover litigation expenses if litigation does not benefit trust); *Nickas,* 954 S.W.2d at 741 (award of litigation expenses authorized only to the extent litigation found beneficial to trust).

[¶ 40] At the outset of our review of the district court's exercise of discretion, it is important to take into consideration the findings of the district court in *Garwood I.* The district court found it unfortunate that Mr. and Mrs. Garwood were persuaded to execute trust instruments that clearly were of no use to them in protecting their assets from estate taxes, that it was the intention of both Mr. and Mrs. Garwood that their estate would be available in its entirety to the surviving spouse until death, and that the focus of Trustees Orlan Garwood and Carol Jones was wholly on their own financial interests rather than on fulfilling the clear intentions of their parents as reflected in the trust documents. *Garwood I,* ¶ 18, 194 P.3d at 325–26. This Court agreed with the district court in its findings and upheld the district court's decision:

> We conclude that the district court's findings of fact are not clearly erroneous and its application of the law to these circumstances is likewise not erroneous.

The Garwoods had the misfortune to fall victim to an itinerate hawker of "fill-in-the-blank," "one-size-fits-all," trust forms. The materials were ill-suited to the Garwoods' needs and have served to squander a significant portion of their hard-earned life savings on legal proceedings and attorney's fees (we are given to understand from the briefs that the Trusts have paid over $49,000.00 in attorney's fees incurred by Orlan Garwood and Carol Jones, and that there is only slightly more than $16,000.00 left in the Family Trust). Clearly there is no pot of gold at the end of the rainbow for anyone involved in this litigation, most certainly not for the 84–year–old Mr. Garwood who is dependent on the income from the Trust to eke out his subsistence standard of living for the remainder of his days.

*Garwood I*, ¶ 22, 194 P.3d at 327.

[¶ 41] Given the findings of the district court, which were affirmed by this Court, that not only did the trust not benefit Mr. and Mrs. Garwood, the litigation made necessary by the Trustees' refusal to sell the Wheatland property likewise did little to benefit the Family Trust, we cannot find that the district court abused its discretion in limiting the amount of fees to the percentage it did.

[¶ 42] The Trustees argue that even if the district court were permitted to limit the Trustees' litigation expenses based on the extent to which the Trust was benefitted by the litigation, the district court abused its discretion in limiting the attorney fees and costs to $10,000. Specifically, the Trustees contend the district court should have reviewed the billing statements of the Trustees' attorneys to ascertain what fees benefitted the Trust, and in the absence of that review, the $10,000 limit was arbitrary.

[¶ 43] Although we agree that the proper approach in making an award of attorneys' fees and costs is to review billing statements, we do not agree with the Trustees that this is a basis for overturning the district court's ruling. The Trustees did not submit their billing statements to the district court, and under those circumstances, the district court would have been well within its authority to require reimbursement of all amounts the Trustees withdrew for their litigation expenses. Under these unique circumstances, however, where the party opposing fees has not appealed or even argued against the amount the district court allowed the Trustees for fees and costs, we will not disturb the trial court's exercise of discretion.

[¶ 44] Likewise, where the onus was on the party seeking fees, in the first instance, to submit an application for fees, complete with supporting billing statements, that party cannot be heard to complain on appeal that a review of those statements was not done. The Trustees had an opportunity after entry of the district court's initial judgment to submit an application for an award of fees and costs, supported by the required billing statements. Indeed, it seems likely the district court may have allowed the Trustees to submit that same evidence, although it would not have been timely, at the hearing on the propriety of the Trustees' withdrawal of funds to pay their litigation costs. The Trustees did not make an offer of the evidence at that hearing. The Trustees had opportunities to submit the required billing statements and did not do so. Under these circumstances, we will not remand for a review of those statements. *See Pekas v. Thompson*, 903 P.2d 532, 537 (Wyo.1995) ("[a] remand to allow additional proof on attorney fees will be allowed only in those instances where a party was denied an opportunity to make proof in the proceeding below").

[¶ 45] Based on the foregoing, we also reject the Trustees' contention that the district court was required to find a breach of trust or fiduciary duty to enter its order on attorneys' fees and costs. The order was not based on a separate claim for damages. The district court's jurisdiction over the original action extended to the question of attorneys' fees and costs, and the Trustees' failure to submit the statutorily required application for fees and costs did not deprive the district court of that jurisdiction. The district court properly addressed the issue by ordering the required reimbursement.

[¶ 46] As a final matter, we address the Trustees' contention that the Trustees have been exposed to an award of damages

in their personal capacities without notice and in violation of their due process rights. We again disagree.

[¶ 47] As discussed above, the district court's order directing the Trustees to reimburse the Family Trust was not a damages award, and as such was not required to be pled as a separate element of damages. Additionally, we again refer back to the district court's findings, upheld by this Court, that the Trustees, Orlan Garwood and Carol Jones, have acted primarily in their personal interests in this litigation. That this is the case is further confirmed by the Trustees' pleadings and filings. In their original answer and counterclaim, the Trustees' submitted their counterclaims in their capacities as trustees and individually, and in later pleadings, such as the above-described request for a stay of any orders for disbursements from the trust, the Trustees objected to disbursements from the trust because of the irreparable harm it would do to them. The district court's finding that the Trustees used the litigation to further their interests as beneficiaries is supported by the record, and the Trustees had ample notice and opportunity to defend their decision to unilaterally withdraw funds from the Family Trust for their litigation expenses.

## CONCLUSION

[¶ 48] The district court had jurisdiction to address issues relating to an award of attorneys' fees and costs. The district court did so in a proper manner, and we find no abuse of discretion in the court's decision.